## HARTFORD ACCIDENT & INDEMNITY CO. v. SWEDISH METHODIST AID ASS'N.

### No. 6170.

Circuit Court of Appeals, Seventh Circuit.

Oct. 22, 1937.

cions were reported to members of the board, and she was directed to make a further audit. Her report was made to the board March 30, 1933, disclosing discrepancies amounting to $5,251.21. Up to this time Lennstrum had denied the shortage, but at this meeting merely insisted it was not as much as reported. On the following day appellee accepted his note for said amount, secured by certain collateral, without releasing him. About two months later it was discovered that Lennstrum had been raising checks which came into his possession, and this information was presented to the board on June 13, 1933. On the following day, appellant, by telegram, was notified by appellee for the first time of any fraud perpetrated by Lennstrum. The amount wrongfully received by Lennstrum on account of raised checks covered by the period of the first bond amounted to $3,587.50, and the amount received by him during the period of the second bond, including an item of $118 which he received for interest and failed to account for, was $868.50. The total of these items, plus interest on the same in the sum of $660.94, or a total of $4,916.44, was the amount of the judgment.

It is the contention of appellant that no losses occurring during the period of the first bond were recoverable unless they were discovered and reported within the period provided in said bond, which period ended on August 10, 1932, while it is the position of appellee that the superseded suretyship rider was attached to the second bond for the express purpose of permitting recovery of such losses according to the terms, conditions, and limitations of the second bond, wherein provision was made for recovery where discovery and claim was made within 15 months after its termination. It immediately appears that the claims of the respective parties requires an interpretation of the superseded suretyship rider, which is as follows:

"Superseded Suretyship Rider.

"To be attached to and form a part of Bond No. 16527, issued by the Hartford Accident and Indemnity Company, of Hartford, Connecticut (hereinafter called the Surety), in favor of Swedish Methodist Aid Association (hereinafter called the Employer), dated the 8th day of October, 1931, on behalf of various officers and/or employees.

"Whereas, the Employer has been carrying Fidelity suretyship as follows:

·J. F. Dammann and Sidney K. Jackson, both of Chicago, Ill. (Wilson & McIlvaine, of Chicago, Ill., of counsel), for appellant.

Oke L. Pearson and Armin G. Kusswurm, both of Chicago, Ill., for appellee.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This appeal is to review a judgment in favor of appellee in an action on two fidelity bonds issued by appellant, together with a superseded suretyship rider attached to the second. The first bond was issued May 14, 1927, and remained in effect until October 8, 1931, when it was canceled, and on said date the second bond, together with the rider, became effective.

Roy Lennstrum, one of the employees covered in each of the bonds, was secretary of appellee from March, 1921, to March, 1933, and in such capacity received the assessments paid by members of appellee.

An auditor working for appellee on January 9, 1933, reported to appellee's president that she was afraid there was a shortage in Lennstrum's accounts. Her suspi-

"Individual Fidelity Bond No. 15793, HO No. 639987 covering Roy M. Lennstrum as Secretary in the penalty of $10,-000.00 effective May 10th, 1927.

"Individual Fidelity Bond No. 15792. HO No. 639988 covering Charles J. Ekstrand as Treasurer in the penalty of $15,-000.00 effective May 10th, 1927, and

"Whereas, said fidelity suretyship, as of the effective date of the attached bond, has been cancelled, or has been terminated by agreement, as is evidenced by the issuance and acceptance of the attached bond and this rider.

"Now Therefore, it is hereby understood and agreed as follows:

"First. That the attached bond shall be construed to cover, subject to its terms, conditions and limitations, any loss under said fidelity suretyship caused by any employee covered by the said fidelity suretyship, which shall be discovered after the expiration of the period allowed under said fidelity suretyship in which claim may be presented after cancellation or termination, or if no such period after the bar of the statute of limitations, and before the expiration of the time limited in the attached bond for the discovery of loss or making claim thereunder, and which would have been recoverable under said fidelity suretyship had it continued in force, and also under the attached bond had such loss occurred during the currency thereof.

"Second. That nothing herein contained shall be construed to render the Surety liable under the attached bond for a larger amount on account of such loss or losses under said fidelity suretyship than would have been recoverable thereunder had it continued in force, or to increase the time for discovering loss under said fidelity suretyship beyond what would have been the time had it continued in force, and as to that part of the loss under the attached bond shall not exceed the amount applicable to the employee causing the loss under the attached bond, and as to the whole loss shall not exceed the amount applicable to the employee causing the loss under either the Fidelity suretyship or the attached bond, whichever may be the larger.

"Signed, sealed and dated this 10th day of October, 1931.

"Hartford Accident and Indemnity
·Company,
"By Ward H. Hilton,
"Attorney-in-fact."

It is claimed on one hand that the language contained in this instrument is plain and unambiguous, while on the other it is said it is confusing and contradictory. We think the latter contention is well founded. The more times we read it, the more confused we become as to what it really means. The paragraph following the word "First" seems to rather clearly indicate that it was the purpose of the rider to make all losses occurring during the period of the first bond recoverable according to the terms, conditions, and limitations of the second bond where discovery was made after the period allowed under the first bond and before the expiration of the time limited in the second bond for the discovery of such loss; while in the paragraph following the word "Second" the language "or to increase the time for discovering loss under said Fidelity surety, beyond what would have been the time had it continued in force" seems to contradict the preceding paragraph. By the paragraph, first referred to, appellant assumed certain obligations arising by reason of the first bond, and in the next paragraph disclaimed such obligations; by the former paragraph certain rights were bestowed upon the insured, and by the latter paragraph they were denied. Just why an instrument so confusing and contradictory in its terms should be employed, we do not know and do not care to hazard a guess. If the rider means what is claimed by appellant, it seems it would have been a rather easy matter to have so stated in terms which could be readily understood.

In London & Lancashire Indemnity Company of America v. People's National Bank & Trust Company, 59 F.(2d) 149, a case decided by·this court, we find a rather similar situation. The previous policy in a different fidelity company had been canceled as of the date of the new bond and rider. Under the old bond, losses were to be discovered within two years after its cancellation. The court held that the purpose of the rider was to cover losses prior to the date of the new bond and not discovered until after the two-year period allowed under the former bond. The court on page 151 of 59 F.(2d) said: "Therefore, in canceling the Metropolitan contract the bank was deprived of the right of recovery for a loss occurring thereunder which was not discovered within two years after the cancellation. The new bond carried no indemnity against loss accruing prior to its issue, and it was to indemnify

the bank against loss occurring prior to the issue, but not discovered within two years after termination of the prior contract, that the rider was attached."

■ The rule is well established that a contract of fidelity or insurance susceptible of two constructions, one favorable to the insured and the other to the insurer, should be construed favorable to the former. First National Bank v. Hartford Fire Insurance Company, 95 U.S. 673, 678, 24 L. Ed. 563; Thompson v. Phenix Insurance Company, 136 U.S. 287, 10 S.Ct. 1019, 34 L.Ed. 408; American Surety Company v. Pauly, 170 U.S. 133, 18 S.Ct. 552, 42 L.Ed. 977. Applying this rule, we are constrained to interpret the rider favorably to appellee, and to hold losses occurring during the period of the first bond discovered after the time allowed in said bond for presenting claims are recoverable according to the terms and conditions of the second bond. It is also urged that the items contained in the judgment based upon losses occurring during the period of the first bond are not recoverable, as that bond only covers larceny or embezzlement, which terms do not include the obtaining of money by the raising of checks. We doubt if this position is tenable, but we do not regard it as necessary to decide the question, inasmuch as appellee was entitled to recover according to the "words and limitations" prescribed by the second bond and it covered "fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction or wilful misapplication," and this language certainly is broad enough to cover the wrongful acts with which Lennstrum was charged.

■ It is also urged that appellee failed to give appellant notice of the loss, itemized statement and proof of loss as is provided by either the first or second bonds. For the reasons heretofore stated, if there were any material difference (which there isn't) in the requirements of the two bonds in this respect, we would follow the provisions contained in the latter bond. This claim is urged as to the losses occurring during the period of both bonds. It would seem that appellee was derelict in its failure to give notice to appellant of the information it had concerning the defalcations of Lennstrum in connection with the assessments collected by him, although it is rather difficult to say just when notice should have been given. Little more than suspicion was directed at him in the beginning, and his dishonesty was not determined with any degree of certainty until the 30th of March, 1933. While immediate notice, no doubt, means such as is reasonable under the circumstances, it was not until the following June 14th that appellant had any notice, which we are inclined to think would be fatal to appellee's right to recover, except none of the items contained in the judgment were based upon the assessment shortage as the court below denied to appellee the right to recover for such shortage. As heretofore stated, it was not until June 13th that appellee discovered the discrepancies with reference to the raised checks and other items which go to make up the amount for which judgment was rendered. As to this portion of his defalcations, notice was given the following day followed by proof of loss. We are confronted with the question as to whether failure to give notice concerning the assessment shortage is a bar to recovery on account of money obtained by raising the checks, which latter fraud was not known at the time the former loss was secured and not until the day before notice was given. It is pertinent to point out that all the items of loss, included in the judgment, were defalcations which occurred prior to any knowledge or information on the part of appellee as to the dishonesty of its employee.

In Guarantee Co. of North America v. Mechanics' etc., Co., 183 U.S. 402, 22 S.Ct. 124, 46 L.Ed. 253, which was a suit upon a surety bond defended on the failure to give notice as provided by the terms of the contract, defaults occurred from September 12, 1890, to April 15, 1893, which were discovered April 15, 1893. The evidence in that case disclosed that in the summer of 1892 the bank knew the teller was speculating. The bank did not notify the company of this, and the court said, 183 U.S. 402, on page 422, 22 S.Ct. 124, 132, 46 L. Ed. 253: "Our conclusion is that the failure of the bank in the particulars adverted to defeats a recovery on the teller's bond for defalcation after information of Schardt being engaged in speculation was received."

Applying this language to the facts in the instant case, the failure to give notice at the time the assessment loss was ascertained would only be a defense (if at all) for losses occurring subsequent to that time, and, as there are no such losses here involved, such failure to give notice is no defense.

The judgment is also assailed on the grounds that appellee and Lennstrum, without the knowledge and consent of appellant, released Lennstrum from all liability on account of the assessment shortage. Although the question is not free from doubt, we believe it is hardly accurate to refer to the transaction which took place between appellee and Lennstrum as a settlement or release. It seems more nearly correct to conclude that appellee took Lennstrum's note and collateral as security for the amount owed by him and allowed an extension of time for him to make good his shortage. No settlement of any kind was made as to the items included in the judgment as rendered. We do not see how appellant was harmed by the agreement, whatever it may be termed, regarding a loss occurring prior to any knowledge concerning other losses which go to make up the judgment. In Citizens' State Bank of St. Paul v. New Amsterdam Casualty Company, 177 Minn. 65, 224 N.W. 451, a similar question was presented, and the court held that the plaintiff was permitted to recover for losses on which timely notice had been given, even though a settlement had been made with reference to other losses.

What we have said concerning losses during the period of the first bond is applicable to the same or similar questions raised concerning losses occurring during the period of the second bond.

The judgment is affirmed.