# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

THE POLICEMEN'S BENEVOLENT ASSOCIATION OF CHICAGO

*v.*

MARY RYCE.

*Opinion filed December 22, 1904.*

1. PRESUMPTIONS—*death is presumed from seven years' continuous absence.* The unexplained absence of a person from his usual place of abode for seven continuous years, and from whom no intelligence has been received within that time, raises a presumption of death upon which the jury may act, where no sufficient facts or circumstances are proven to overcome the presumption.

2. INSTRUCTIONS—*when instruction is not misleading, as representing presumption to be conclusive.* An instruction which, after stating the facts necessary to raise a legal presumption of the death of a person from his seven years' unexplained absence, authorizes the jury, upon such proof, to presume that such person is dead, is not misleading, as representing the presumption to be conclusive, where other instructions direct the jury to consider all proved facts and circumstances attending his disappearance, and that if they believe, from the evidence, the person is not dead they shall so find.

3. SAME—*when omission of requirement respecting continuous search is harmless.* Omission from an instruction concerning the presumption of death from seven years' unexplained and continu-

ous absence, of the requirement that diligent search has been made, is harmless, where other instructions require proof of the case by a preponderance of evidence "as charged in the declaration," which alleges diligent and continuous search.

4. SAME—*when instruction is erroneous in singling out particular fact.* An instruction which singles out the fact of the expressed intention of a missing person to return to his home when he left for the last time as to be considered by the jury in determining whether he is dead, is properly refused, where other instructions already given require them to take into consideration upon that question all the facts and circumstances developed by the evidence.

5. SAME—*when instruction as to satisfactory evidence of death is misleading.* An instruction in an action on an insurance certificate, which tells the jury that before they could award a recovery they must believe, from the evidence, that defendant had received "satisfactory evidence of the death" of the insured, is misleading and uncertain in not defining what is meant by satisfactory evidence.

6. EVIDENCE—*when admission of improper evidence is harmless.* Admission in evidence of a police record book showing the disappearance of a person on a certain date, even if for any reason it is incompetent, is harmless, where the fact sought to be proved thereby is fully established by other competent evidence.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

The following is a statement of the facts in this case, as made by the Appellate Court in their opinion deciding it, with the exception of the parts omitted where stars occur, to-wit:

"James Ryce, on February 19, 1890, was a member of the police force of the city of Chicago in good standing, and on that day received a certificate of insurance from the appellant association, in which the appellee, Mary Ryce, then his wife, was named beneficiary, by which the association agreed to pay to her within thirty days after satisfactory evidence of the death of said James Ryce, two dollars for every member of the association, provided that amount should in no event exceed $2000.00. On May 15, 1895, while still a member of said association, in good standing,

and having paid all his dues and assessments up to that time, said Ryce disappeared, and has never since May 16, 1895, been heard of, although diligent search for him had been made up to the time of the commencement of this suit, on August 8, 1902. Presuming that he was dead, appellee, having paid all her husband's dues and assessments, brought this suit, and recovered a verdict, and judgment thereon, of $2000.00, from which the association has appealed. * * *

"The evidence * * * shows, in substance, that James Ryce was married to appellee in May, 1889, and was then aged about twenty-nine years. They lived happily together as husband and wife until May 15, 1895, and had one child born to them, which was nearly five years of age at that time. Mr. Ryce had been a member of the police force of Chicago prior to his marriage, and was thereafter from time to time until May 7, 1895, when, under a general order of the then mayor, he was, with five hundred other police officers, discharged. During his time of service he was discharged once or twice prior to May 7, 1895, as the evidence tends to show, because of changes in the city administration. * * * The evidence on behalf of the appellant is also to the effect that he was once discharged because of absence from duty without permission, intoxication and neglect of duty. There is also a conflict in the evidence as to Mr. Ryce's habits with regard to the use of intoxicating liquors, but * * * while it tends to show that he was in the habit of drinking occasionally * * * he was in no way seriously affected thereby. On May 15, 1895, he left his home at Cragin near the western limits of Chicago in the morning, after bidding good-by and kissing his wife and little girl, and stating to the former that he would return on the afternoon train. His wife says that she expected that he would return on the afternoon train, but he did not—that she waited until the twelve o'clock train was due, but he did not come, and she has never since heard anything from him. On the second day after his disappearance, appellee's

brother, and a police officer, named Lyons, inquired for Mr. Ryce at a saloon on West Madison street in Chicago, where it was suggested he might go, and were told by a bar-tender that Mr. Ryce had been in the saloon the previous day or evening. With this exception no information or intelligence as to his whereabouts has ever been received by his wife, relatives, friends, or any one else, so far as known, although a dispatch containing his description in detail, and that he had been missing since the previous Wednesday, which was May 15, was sent out on May 21, 1895, to each police station in the city of Chicago, and it was read to the police officers at roll-call in at least one station. It appears that it was the custom to read at roll-call such dispatches at every police station in the city. The record of the dispatch in question, kept by the police department in Chicago in the regular course of business, indicates that this dispatch was sent to all the stations in Chicago on said May 21. The evidence shows that appellee made numerous inquiries of her neighbors and friends and of numerous relatives of Mr. Ryce, and, as she says, of 'every one I came in contact with'; all that I knew,' but was unable to get any information with regard to him. It appears that his disappearance was a matter of common talk among his acquaintances and neighbors, and that many of them had been inquiring after him to find out his whereabouts, but no information was ever received by the many, who were called to testify. Also, several of his relatives who were called to testify stated that they made like inquiries, but none of them could get any information of him. It is shown that one of his sisters, Mrs. Bridget Walsh, with whom he lived for about five years prior to his marriage, and whom he visited once or twice a week at her home after his marriage, notified certain of his relatives in Wisconsin and in Ireland of his disappearance, but received no communication from them. She says in this regard: 'I have kept up the correspondence among my relatives, and inquired for my brother and never heard from him in any way. * * *

I corresponded with my mother in Ireland, wrote that my brother had disappeared, and that I could not find him, and I believed him dead. I asked her if she had heard from him. She said no. I got a reply by letter about six weeks later. I have not that letter. I don't know where it is."

Upon appeal to the Appellate Court, the judgment of the circuit court in favor of appellee for $2000.00 has been affirmed; and the present appeal is prosecuted by the appellant association from such judgment of affirmance.

CANNON & POAGE, for appellant.

JOHN C. KING, and WILLIAM J. KING, (ANDREW J. HIRSCHL, of counsel,) for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

By stipulation between the parties, substantially all the facts, necessary to establish a right of recovery in the appellee, are admitted, except the fact of the death of the insured. It was agreed between the parties that, at the time of the commencement of this suit, James Ryce, the insured, was a member of the appellant association in good standing; that all dues and assessments were paid up; and that the association on February 19, 1890, issued the certificate of insurance, as described in the statement preceding this opinion, to James Ryce. The undisputed evidence in the case is that James Ryce, the insured, was the husband of the appellee. The only question, therefore, to be determined by the jury, was the question whether or not the jury were authorized by the evidence to presume that the insured was dead at the time of the commencement of the present suit. This question is raised upon the record by the motion of the appellant at the close of the evidence of the plaintiff below, and again at the close of all the evidence, to instruct the jury to find a verdict in favor of the defendant below, the appellant here.

At the close of all the evidence the defendant submitted to the court a written instruction to the jury to find the issues for the defendant, and this instruction was refused, to which ruling exception was taken by the defendant. The facts are settled by the judgments of the lower courts, and the only matters to be decided by us are questions of law, arising out of the action of the trial court in giving and refusing instructions, and in ruling upon the evidence.

The court gave one instruction for the plaintiff below, and three instructions for the defendant below. The instruction, so given for the plaintiff below, appellee here, is as follows:

"The court instructs the jury, as a matter of law, that if you find from the preponderance of the evidence in this case that James Ryce, the insured, left his residence and home and has been continually absent therefrom for a period of over seven years without any intelligence being received of his whereabouts by the members of his family, relations, neighbors and acquaintances within said period or at any time thereafter, then such continuous absence, together with such lack of intelligence, raises the presumption of death of the said James Ryce, and the jury on such proof have a right to presume his death."

The three instructions so given on behalf of the defendant below, appellant here, are as follows:

1. "The jury are instructed that in determining whether the insured, James Ryce, was dead at the commencement of this suit, they must consider all the circumstances under which he left which are shown on this trial, together with the length of time he has been gone, if any, and from all these facts and circumstances, the jury must determine whether the said James Ryce was in fact dead at the time of the commencement of this suit.

2. "The court instructs the jury that in order to recover in this case the plaintiff must establish her case, as charged in her declaration, by the preponderance of the evidence.

3. "The jury are instructed that, if you believe from the evidence and all the facts and circumstances shown on this trial, that the insured, James Ryce, was not dead at the time of the commencement of this suit, then your verdict must be for the defendant."

*First*—It is said by counsel for appellant that the instruction, given for the appellee, is erroneous upon the alleged ground that it presents to the jury the presumption of death, arising from the absence of the insured for seven years without any intelligence as to his whereabouts, as a conclusive presumption; and that, in this respect, the instruction amounted to a direction to the jury to find for the appellee, if an absence of seven years without such intelligence was shown.

The language of the instruction is substantially the same as that which has been used by this court in a number of cases. In *Hitz* v. *Ahlgren,* 170 Ill. 60, we said (p. 63) : "The rule in this State is, that the absence of a person for seven years from his usual place of abode or resort, and of whom no account can be given, and from whom no intelligence has been received within that time, raises the presumption that he is dead." To the same effect is *Reedy* v. *Millizen,* 155 Ill. 636; *Johnson* v. *Johnson,* 114 id. 611.

Counsel for appellant criticise the following words at the close of the instruction, to-wit, "and the jury on such proof have a right to presume his death," and say that those words amounted to a direction to the jury to find for the plaintiff. The language thus objected to, however, was used by this court in a discussion of this subject in the case of *Whiting* v. *Nicoll,* 46 Ill. 230, where it was said (p. 235) : "So that it has become to be regarded as a settled principle, that the absence of a party for seven years without any intelligence being received of him in that time raises the presumption that he is dead, and the jury, on proof of such absence, have a right to presume his death."

The instruction, upon a careful consideration of its terms in connection with the instructions given for the appellant, is not justly subject to the criticism thus made upon it. The instructions, considered as one charge, authorized the jury to take into consideration the circumstances, attending the disappearance of the insured, and bearing upon the question whether he was dead or not. The presumption of death, arising from an unexplained absence of seven years, is not a conclusive presumption, but may be rebutted by proof of facts and circumstances inconsistent with and sufficient to overcome it. The presumption of death, under such circumstances, may be overcome by proof of facts and circumstances, raising a contradictory presumption. (*Johnson* v. *Johnson, supra; Reedy* v. *Millizen, supra*). The jury were told that they must consider all the circumstances, under which the insured left, which were shown on the trial, together with the length of time he had been gone, and from all such facts and circumstances they were to determine whether he was in fact dead at the time of the commencement of the suit; and they were also told that, if they believed from the evidence and from all the facts and circumstances shown on the trial, that the insured was not dead at the time of the commencement of the suit, their verdict should be for the defendant. Under the instructions, the jury were warranted in finding the fact of death after due consideration of all the other facts in evidence, but the fact of such death was not thereby presented to the jury as a conclusion, which they were obliged to draw in the face of proof furnishing ground for other inferences. There was some testimony, tending to show that the insured had been discharged from the police force, and that he was in the habit of using intoxicating liquors. It was for the jury to say, whether such facts were sufficient to justify them in believing that he remained away from home because of them, and not necessarily that he should be presumed to be dead. We are of the opinion that the instructions did not present the

presumption of death as a rule of law, which imposed upon the jury an imperative obligation to find the fact of such death in favor of the appellee.

The instruction is also complained of, as omitting any reference to the question whether or not inquiry or search was made for the insured. In *Hitz* v. *Ahlgren, supra,* we said (p. 63) : "In order to enforce the presumption of death of a person after an absence of seven years, there must be evidence of diligent inquiry at the person's last place of residence, and among his relatives, and any others who probably would have heard from him, if living. * * * Long absence, alone, no matter how long continued, is not sufficient to raise the presumption of death. There must be shown an absence of seven years or more from the established residence of the party, before the presumption of death can be raised. * * * We hold, therefore, that mere absence of a person from a place where his relatives reside, but which is not his own residence, and mere failure on the part of his relatives to receive letters from him for a period of seven years, are not of themselves sufficient to raise a presumption of death. The absence must be from his usual place of abode or resort." The evidence is abundant in this case, that inquiries were made at the last place of residence of the missing James Ryce, and at his usual places of abode or resort. He had four or five sisters living in Chicago in different parts of the city. Inquiries were made of them. He had relatives living in Wisconsin. Inquiries were made there. He had relatives living in Ireland. Letters were written in reference to his absence to these relatives. The evidence tends to show that a policeman named Lyons, and a brother-in-law of James Ryce were told by a bar-tender in Chicago on May 17, the second day after James Ryce left his home, that Ryce was in his saloon on the evening of May 16. Complaint is made that the clue, alleged to have been thus furnished as to his whereabouts, was not followed up. The only ground for this complaint is the statement by the policeman,

213—2

Lyons, in his testimony that he did not see the bar-tender, who made this statement to him after May 17, and did not know where he could be found at the time his testimony was given. There is nothing in the evidence, so far as we have been able to discover, to show that this bar-tender knew anything about the whereabouts of James Ryce, except that he had been in his saloon on the evening of May 16. It cannot be said that, because of the information given by the bar-tender there was a failure to follow up a clue; but it was for the jury to say, as to this evidence and as to all the other facts and circumstances developed by the proof, whether or not those, whose business it was to inquire and search for the missing man, performed their duty in that respect. The objection, made by counsel for appellant to the instruction, is that it was silent upon this subject of inquiry or search.

The instruction, presented to the minds of the jury the question, whether or not James Ryce had been continually absent for a period of over seven years without any intelligence being received of his whereabouts; and such continuous absence, together with such lack of intelligence, was said by the instruction to raise the presumption of death. In view of the evidence, the language of the instruction involved a consideration of the evidence upon the question whether or not inquiries had been made as to the whereabouts of the insured. The jury were directed to consider whether or not there was a lack of intelligence as to his whereabouts, and this lack of intelligence, in view of the evidence, may have been the result of the inquiry and search shown by the proof to have been made. If there was no intelligence of the movements of the missing Ryce, the want of it was as much the result of inquiry and search, as of a failure to make such inquiry and search.

But whether the instruction is capable of this interpretation or not, the court instructed the jury at the request of the appellant, that the plaintiff in order to recover in this case "must establish her case as charged in her declaration by the

preponderance of the evidence." Upon referring to the declaration, we find the following allegation: "Said James Ryce suddenly and without explanation left and disappeared from his home 1039 North Fifty-first avenue, Chicago, has been unaccountably absent ever since, and has never returned or been heard of since said departure, although plaintiff has made diligent and continuous search for him and been wholly unable to find him or get any clue of him." When the jury were thus told that the plaintiff must establish her case as charged in the declaration, the jury, upon looking at the declaration, could not have concluded otherwise than that she must establish her case by showing that there had been diligent and continuous search for the missing Ryce. Certainly, the evidence tended to establish the fact of such diligent inquiry and search.

*Second*—Complaint is also made in behalf of the appellant, that the trial court erred in refusing three instructions asked by the appellant upon the trial below. Two of these instructions related to the subject of the intention of the insured when he left his home. These instructions told the jury that, in order to find that the insured James Ryce was dead at the commencement of this suit, they must believe from the evidence that, at the time he left his usual place of abode, he intended to return thereto, or at least to let his friends and relatives hear from him. The only positive evidence as to the intention of the insured upon this subject is the testimony of his wife, that, at the time of leaving, he told her he would return on the afternoon train. In view of this testimony, the refusal of the instruction could have done the appellant no harm, because the jury were bound to conclude that he did intend to return when he left, and, therefore, under the direction contained in the instruction, were bound to find that he was dead at the commencement of the suit, and not merely to entertain a presumption as to his death. The instruction singled out the fact of his expressed intent, and gives undue prominence to it as one of the circumstances

to be taken into consideration by the jury in coming to a conclusion upon the question whether or not he was dead. Instructions already given had required them to take into consideration all the facts and circumstances developed by the evidence, and it was wrong to single out and give prominence to one particular fact or circumstance.

As we understand the argument of counsel for appellant, it is that, if the circumstances were such as to indicate an intention on the part of the insured not to return, then his absence might be accounted for without assuming his death. That it to say, he may have intended to go elsewhere to engage in business, or may have had some other good reason for not wishing to return to his home. From such considerations it might be argued that his absence was not attributable to his death, but was due to other causes. On the contrary, the theory is that, if he intended to return when he left, and did not return, the presumption of his death would be stronger. The instruction in question eliminated from the consideration of the jury the question, whether any presumption would arise as to his death from the nature of his intention, but presented to them substantially the statement that such intent was conclusive evidence upon the subject. In this respect the instruction was erroneous, as it is well settled that it is a question for the jury to determine, from all the facts and circumstances, whether or not the fact of death at the time contended for exists.

It is also assigned as error that the court refused to give an instruction on behalf of the appellant, which told the jury that, before they could recover in this case, they must believe from the evidence adduced at the trial that the defendant had received satisfactory evidence of the death of James Ryce, the insured. By the terms of the certificate of insurance the appellant association agreed to pay the amount of the insurance money to Mrs. Ryce "within thirty days after satisfactory evidence of the death of said James Ryce." The evidence shows that on July 6, 1902, about two months

after the expiration of the seven years from the disappearance of the insured, Mrs. Ryce, or her attorney and agent, presented to the association affidavits, setting up all the facts in regard to the disappearance of Ryce, and the length of the time of his absence, and the efforts made to discover his whereabouts. It is not denied that the association refused to pay the $2000.00 to the beneficiary in the certificate, and this suit is the result of such refusal. The question whether or not there was satisfactory evidence of the death of the assured was a question to be determined by the jury in this suit, and not by the association. The question in the case upon the trial below was, not whether the association received satisfactory evidence of death, but whether the jury trying this case believed from the evidence that such death had occurred. The instruction is misleading and uncertain in not defining what is meant by satisfactory evidence of death. While the questions of fact, whether proofs of loss or of death have been furnished, or whether the insured rendered as full proofs of loss or death, as the circumstances would permit, are for the jury, yet the legal effect of such proofs is a question of law for the court. (11 Ency. of Pl. & Pr. pp. 429, 431; *Thomas* v. *Burlington Ins. Co.* 47 Mo. App. 172.) In *Thomas* v. *Burlington Ins. Co. supra,* the court say: "Defendant's counsel, however, seems to have gone on the theory that the sufficiency of this paper as a proof of loss, whether or not it filled the requirements of the policy and the law, was a question for the jury, and an instruction was asked wherein this question of law was submitted to the jury. The court refused the instruction, and correctly, of course. It is the province of the court, and not the jury, to declare the legal effect to be given a written instrument." In addition to this, the declaration alleges that the plaintiff submitted satisfactory evidence of the death of the insured to the appellant association, and, as the jury were told by the instructions that the plaintiff must establish her case as charged in her declaration, they were required to find, if

such finding was important, that the association had received satisfactory evidence of the death.

*Third*—It is said that the court erred in admitting in evidence a record found in the office of the police department of the city of Chicago, kept by the desk sergeant in the ordinary course of his duty, for the reason that such duty was not imposed by law. It is not necessary to discuss the question whether the court erred or not in the admission of this police record. If it be admitted that there was error in its admission, it could not have done the appellant any harm. The only fact, sought to be established by it, was the fact that James Ryce had been missing since May 15, or 16, 1895. The fact that he had been missing since that date was so overwhelmingly established by other evidence that the additional confirmation thereof by the recital in the police record was of no importance, and added no particular weight to the testimony already given by the witnesses upon that subject.

We see no good reason for interfering with the judgments of the courts below. Accordingly, the judgment of the Appellate Court, affirming the judgment of the circuit court, is affirmed.

*Judgment affirmed.*