IRVIN JACOBS & CO. v. FIDELITY & DEPOSIT CO. OF MARYLAND.

No. 10669.

United States Court of Appeals
Seventh Circuit.

March 16, 1953.

Rehearing Denied April 15, 1953.

796

Charles Aaron, Lewis Schimberg and Edward S. Stern, Chicago, Ill., (Aaron, Aaron, Schimberg & Hess and Johnston, Thompson, Raymond & Mayer, Chicago, Ill., of counsel), for appellant.

John P. Hampton and Roger D. Doten, Chicago, Ill., for appellee.

Before DUFFY, FINNEGAN and LINDLEY, Circuit Judges.

DUFFY, Circuit Judge.

Plaintiff brought this action on a fidelity bond issued by defendant, to recover losses allegedly sustained by it through fraudulent and dishonest acts of one of its employees. The case was tried to a jury which rendered a verdict for the defendant, upon which the district court entered the judgment from which this appeal is taken.

Plaintiff is engaged in the business of making first mortgage loans on real estate, including construction loans on buildings in the process of construction and loans to veterans which are guaranteed by the Veterans Administration (hereinafter referred to as VA). Advance Mortgage Company (hereinafter referred to as Advance) is a wholly owned subsidiary of plaintiff. Advance makes first mortgage loans insured by Federal Housing Administration (hereinafter referred to as FHA) and was organized for that purpose, as plaintiff at that time was a sole proprietorship and only a corporation could be an approved mortgagee on loans to be guaranteed under the National Housing Act, 12 U.S.C.A. § 1736 et seq., as amended, 50 U.S.C.A.Appendix, § 1882 et seq. Each company handled the interim financing from the making of the loan to the completion of the building, at which time the note and mortgage would be sold to an investor.

The fidelity bond issued by defendant to plaintiff is known as a "brokers' blanket bond" insuring among other things against "any loss through any dishonest, fraudulent or criminal act of any of the employees, including loss of property through any such act of any of the employees, whether acting alone or in collusion with others and wherever any such act may be committed." Defendant agreed to hold plaintiff and Advance harmless in an amount not to exceed $100,000.

It was alleged in the complaint that between August 1, 1947, and December 15, 1948, at a time when the fidelity bond was in full force and effect, one Erik T. Smith was employed by plaintiff and Advance as manager of their construction loan departments, and that while so employed he committed certain dishonest acts as a result of which plaintiff and Advance suffered losses in excess of $100,000. For 22 or 23 years before 1946, Smith had been engaged in various activities in the construction business. Immediately prior to his employment by plaintiff, he had been employed by the Walter Butler Company of St. Paul, Minnesota, which company was engaged in heavy industry construction. On Labor Day, 1946, Irvin Jacobs, president of plaintiff and of Advance, interviewed Smith in Chicago with reference to a job opening with his companies. Smith told Jacobs he had experience as a large project job estimator and had awarded contracts for the Butler Company and had been in actual charge of numerous large projects in the field. When asked by Jacobs whether he had experience in construction payouts Smith told him that when contracts which he had awarded reached the point at which the contractor was entitled to or desired to have money paid to him, such payments passed over his desk for approval. Smith had no previous experience in small home construction.

Smith commenced work for plaintiff and Advance on September 30, 1946, for an agreed salary of $9,000 per year as manager of the construction loan department of each company. Although Smith testified that detailed instructions as to his duties were not given to him by Jacobs at the time he was employed or on the day he started his work, he admitted that Jacobs

told him that he was to make inspections to ascertain whether the work had been done before any payouts were made by him.

When Smith was first employed, his predecessor, Bjorklund, had left. He was informed as to the nature of his job by two employees who had been temporarily assigned to the construction loan office after Bjorklund had departed. At first his only assistant was a stenographer. In April, 1948, Mr. Hodson, an estimator, was assigned to Smith's department. Construction work in which his employers were interested was scattered over an area extending from South Bend, Indiana, to Racine, Wisconsin. Smith testified that the office opened at 8:15 A.M. and that he worked practically every day until 7:00 or 8:00 P.M.; that he also worked Saturdays and made some inspections on Sundays. He had no means of private transportation until he purchased an automobile of his own in August, 1948, and up until that time he had to use public transportation, or occasionally rented an automobile, in order to inspect the jobs.

In 1948, plaintiff made arrangements with Westowns Construction Company, a subdivider, to consider the making of first mortgage loans on new homes to be constructed by it for purchasers of property in Flowerfield Acres, a subdivision near Lombard, Illinois. The lots in Flowerfield were to be sold only to veterans and all mortgage loans were to be guaranteed by VA in accordance with its regulations. Advance made similar arrangements with Community Developers, Inc., for loans to purchasers of property in Lakewood Heights, a subdivision near Mundelein, Illinois. All loans to be made in Lakewood were to be insured by the FHA. Smith had nothing to do with the original arrangements between plaintiff and Westowns or between Advance and Community.

Plaintiff does not claim that Smith personally profited by his actions which caused plaintiff's loss. Plaintiff urges that Smith's failure to carry out instructions given to him, and his failure to follow established practices of plaintiff and Ad-

vance showed a reckless disregard for the interests of his employer which, plaintiff says, amounts to dishonesty under the meaning of that term in the fidelity bond. Plaintiff says that Smith was guilty of acts of commission and omission which evinced a want of integrity and an intentional breach of trust. Plaintiff claims that by reason of such dishonest acts of Smith, its loss totaled $41,404.23 on loans made on property in Flowerfield, and that the loss of Advance amounted to $84,728.55 on loans made on property in Lakewood, a total of $126,132.78.

There was considerable dispute as to just what Smith's exact duties and obligations were. Jacobs testified that he told Smith he would be responsible for payouts; that he must protect the interests of the companies; that it was his duty to check plans and specifications to be sure construction could be completed for the amount stated by the loan applicant; that he would have to be sure FHA and VA regulations were met; that he was not to open a loan until there were ample funds in the loan account to insure completion; that he would have to watch out about utilities and he would have to approve the contractor in the first instance; that he would have to approve a sworn construction statement if the general contractor did not do all the work, and in cases of doubt he would have to check sub-contractors; that he would have to be sure critical materials were supplied; that he was not to make any payouts unless he knew work had been done and materials furnished and unless he had a proper order and a proper waiver; that he had to provide an adequate "buffer"; that he had to be sure a survey was in conformity with the plans and specifications; and that it was the practice of plaintiff and Advance not to make payouts until a house was under roof and not unless plaintiff and Advance were sure there was enough money in the loan to insure completion.

When Jacobs was asked to relate any specific instructions given to Smith as to how he was to perform his job, he testified that he told Smith it was the latter's duty to check plans and specifications on con-

struction loans to verify costs; that Smith should be sure there was always enough money left in the loan to complete the building; that plaintiff must always have a buffer to provide for contingencies; that Smith must be sure public utilities and street improvements were installed; that he must be sure to inspect the progress of the work as it was done, and to make no payouts excepting for work done; and that he must check the commitments from FHA and VA so that all special conditions would be met.

Smith denied receiving most of the instructions which Jacobs testified he had given. Smith claimed there were no fixed procedures as to payouts and waivers, and that as he went along in his employment he worked out his own procedures. He further testified that he or others in his department made inspections of homes on which loans had been made; also that he did not to his knowledge make a payment to either Westowns or Community without having what he thought were proper documents.

Plaintiff and Advance did not suffer any loss except on loans made on properties in Flowerfield and Lakewood Subdivisions. There apparently is no complaint as to Smith's conduct of his department for a period of almost a year after he was employed and prior to the time that loans were made in these two subdivisions.

On December 6, 1948, Smith told Jacobs that he had made a payment of $13,500 to Graumann and Maher for lumber, without having received waivers from them, and that Collins Lumber Company, which had actually furnished the lumber, had filed mechanics' liens against homes in Lakewood on which Advance had made loans. Jacobs testified that this was the first information he or other officers of plaintiff and Advance had received that Smith had not carried out instructions given to him or had not followed the established practice of the two companies.

Plaintiff's Exhibit 110 was a tabulation of its claim of actual loss by individual loans, all on properties located either in Flowerfield or Lakewood. The items were listed under separate columns, with the totals of each designation as follows: (1) For work not done or materials not furnished, $67,144.84; (2) For lost materials having to be replaced, $8,805.48; (3) For work and materials not provided for in the construction statement but required by the plans and specifications $10,127.10; (4) For work and materials required to correct construction, $14,131.26; (5) For additional work and material not adequately provided for in construction statement, $16,940.-58; (6) For subdivision requirements in Lakewood, $10,594.

The jury returned a verdict for the defendant, thus resolving issues of fact in its favor. True there is much evidence in the record which could have sustained a verdict for the plaintiff. It is difficult to explain why a man experienced in the construction business would have paid out large sums without securing mechanics' lien waivers, or to justify other payments for work apparently never performed. But we are not the triers of the facts. The jury was entitled to believe the explanations given by Smith, and then under the trial court's instructions, to characterize his acts as honest or dishonest.

■ The words "dishonest" and "fraudulent" used in reference to conduct covered by the bond are to be given a broad meaning. Citizens Trust & Guaranty Co. of W. Va. v. Globe & Rutgers Fire Insurance Co., 4 Cir., 229 F. 326, 330. It is not a necessary condition that the employee personally profited by his acts. United States Fidelity & Guaranty Co. v. Egg Shippers Strawboard & Filler Co., 8 Cir., 148 F. 353, 355; Brandon v. Holman, 4 Cir., 41 F.2d 586. However, mere negligence, mistake, or error in judgment would not ordinarily be considered a dishonest act. Acts resulting from incompetence cannot be characterized as dishonest.

■ Under the circumstances of this case we think that the issue of whether Smith's acts constituted dishonesty within the meaning of the term in the bond was a fact question for the jury to decide. This court, in London & Lancashire Indemnity Co. of America v. People's National Bank & Trust Co., 7 Cir., 59 F.2d 149, 152, said, "If it indicates a reckless, willful, and

wanton disregard for the interest of the employer—if it be an act manifestly unfair to the employer and palpably subjects him to likelihood of loss—a fact question of liability for loss thereby ensuing, as from a dishonest act, is fairly raised."

Plaintiff asserts the trial court erred in denying its motion for a new trial on the ground that the verdict rendered was against the clear weight of the evidence. It also urges as error that the court submitted to the jury the questions of inadequacy or waiver of its proof of claim. It also asserts that the court erred in admitting certain irrelevant and immaterial evidence which plaintiff claimed was highly prejudicial to it.

 Prior to the time that the jury returned its verdict the plaintiff did not move for a directed verdict or otherwise question the sufficiency of the evidence to support a verdict if returned in favor of the defendant. Under well established principles, the sufficiency of the evidence to support the verdict is not preserved for review, Flint v. Youngstown Sheet & Tube Co., 2 Cir., 143 F.2d 923; Miller v. Maryland Casualty Co., 2 Cir., 40 F.2d 463, 465, unless this is one of those exceptional cases, Charles v. Norfolk and Western Ry. Co., 7 Cir., 188 F.2d 691, 695; Commercial Credit Corp. v. Pepper, 5 Cir., 187 F.2d 71, which render inapplicable the general rule. To demonstrate why we do not consider the case at bar as one of such exceptional cases, we set forth sufficient facts to indicate that a jury question was presented. The case at bar comes within the general rule that the granting or refusing of a new trial bottomed on the claim that the verdict is against the weight of the evidence is a matter within the sound discretion of the trial court.

We next consider whether the trial court committed prejudicial error in submitting to the jury the questions of plaintiff's compliance with or defendant's waiver of the bond provision referring to proof of claim. Plaintiff first learned of any loss on December 6, 1948, when Smith told Jacobs that the Collins Lumber Company had filed mechanics' liens against a number of the residence properties in Lakewood. At that time plaintiff's officers had no idea as to the extent of its losses, but Jacobs called in an auditor and undertook an immediate investigation, and notified defendant. An extended investigation followed. The bond contained a provision, " * * * and within ninety days after learning of such loss shall file with the underwriter an itemized proof of claim duly sworn to." Plaintiff did file a verified proof of claim which was received by defendant on February 26, 1949, which was within 81 days after the discovery of the loss. On March 14, defendant returned plaintiff's proof of claim in a letter stating, "We return the proof of loss enclosed with your letter of February 25, 1949. It cannot be accepted as filed in as much as it does not allege acts covered by the bond." This was defendant's only objection to the proof of claim until the institution of the suit, when it contended that the proof of claim was insufficient and improperly itemized. The proof of claim contained schedules of claimed losses, specified the name of the employee whose acts caused the losses, listed the types of acts committed by Smith in the handling of his duties which led to the losses, and specified the manner in which the losses arose. The proof of claim also stated that the books and records of plaintiff and Advance were open to it for checking and verification.

In its brief defendant complains, "These schedules merely state loan numbers, borrowers, loan proceeds and the additional receipts and the total thereof, disbursements for construction and other disbursements and the total thereof and the balance remaining after deducting the total disbursements from the total receipts followed by a column setting up the estimated cost of completion and a final column setting up the difference between the estimated cost of completion and the balance of monies on hand."

██ The provision in the bond requiring an itemized proof of claim must be construed reasonably. Fidelity & Deposit Co. of Maryland v. Peoples Bank of Sanford, 4 Cir., 72 F.2d 932; Maryland Casualty Co. v. First National Bank, 5 Cir., 246 F. 892, 893. It will not be construed as requiring the impossible. When the dishonesty of an

employee is discovered it is usually impossible for an employer to have knowledge of each item of the loss. Usually, as here, extended investigation by auditors is necessary. If the proof was itemized to the extent that was reasonably possible under the circumstances, and it was sufficient for defendant to ascertain the nature of the different items upon which the claim was based, it was sufficient. We hold that the proof of claim met this test.

■ Although we think the proof of claim was sufficient, we are also of the view that defendant waived any such defense by denying liability on the ground that Smith's acts were not "covered by the bond," that is to say, they were not dishonest within the meaning of that term in the bond. Lyon v. Metropolitan Life Insurance Co., 7 Cir., 101 F.2d 658, 659. See also: Annotations in 22 A.L.R. 407 and 108 A.L.R. 901.

■ There never was any dispute that the verified itemized proof of claim was given within the 90 day period from the date when plaintiff first learned of its loss. The letter returning the proof of claim was in evidence. These facts being undisputed, the sufficiency of the proof of claim and the question whether there was a waiver of its sufficiency by defendant were matters for the trial court to determine, and should not have been submitted to the jury. In Metropolitan Life Insurance Co. v. Foster, 53 Ga.App. 21, 184 S.E. 660, 662, the court said, "Had there been an issue of fact as to whether the plaintiff gave the above-stated notice, it would have been a question for the jury; but the construction or sufficiency of the notice was for the court. * * * In view of the foregoing, and other authorities, we hold that the construction and sufficiency of the proof of loss furnished by the assured were matters for the court to determine, and the judge properly excluded this from the consideration of the jury." See also: Policemen's Benevolent Ass'n of City of Chicago v. Ryce, 213 Ill. 9, 72 N.E. 764; Continental Life Insurance Co. v. Searing, 3 Cir., 240 F. 653. In Home Insurance Co. of New York v. Williams, 5 Cir., 237 F. 171, 176, the court said, "The facts being undisputed, it becomes a matter of law for the court."

Was the erroneous submission to the jury of the question of the sufficiency of the proof of claim and the question of waiver by the defendant prejudicial to the plaintiff? This was a close case. Much evidence, including a considerable amount of documentary evidence, was received which could have justified a verdict for the plaintiff. The jury might have based their verdict favorable to the defendant upon a belief that the proof of claim was insufficient, and that there had been no waiver by defendant. The court told the jury that it was a condition precedent to a recovery by defendant that a verified itemized proof of claim be filed with the underwriters within the ninety day period. In its argument to the jury defendant urged that the proof of claim was not sufficient. We have no way of knowing what effect the erroneous submission of these questions may have had on the jury. We hold that these errors were prejudicial to plaintiff. Trumbo v. Chicago, Burlington & Quincy Railroad Co., 389 Ill. 213, 59 N.E.2d 92; Wende v. Chicago City Railway Co., 271 Ill. 437, 111 N.E. 275.

■ Defendant asserts that the propriety of submitting to the jury the questions of compliance with or waiver of the bond provision in reference to proof of claim have not been preserved for review. Defendant argues that plaintiff should have requested a peremptory instruction which it failed to do, and further that three instructions given by the court on the question of the waiver actually were requested by plaintiff.

In presenting requests for instructions, plaintiff's counsel informed the court that he considered the questions of sufficiency of the proof of claim and waiver were clearly questions of law for the court, but the trial judge replied, "I think it is a question of fact." Counsel then replied, "Very well, then, they should be given as drafted." Defendant argues that this was an acquiescence by plaintiff and that it is now precluded from raising these points on appeal.

Rule 46, Federal Rules of Civil Procedure, 28 U.S.C.A., provides that formal exceptions to rulings or orders of the court

are unnecessary. Under Rule 51, the objection is sufficient so long as the trial judge understands plaintiff's position. 5 Moore's Federal Practice (2d Ed., 1951), Sec. 51.04, p. 2505. In Moreau v. Pennsylvania R. Co., 3 Cir., 166 F.2d 543, 545, the court said, " * * * Counsel must make his points clearly so that the trial judge may see what they are and if he believes they are right, follow them. But he is not required to indulge in reiterative insistence in order to preserve his client's rights." It has also been held in a recent case, Keen v. Overseas Tankship Corp., 2 Cir., 194 F. 2d 515, certiorari denied 343 U.S. 966, 72 S.Ct. 1061, 96 L.Ed. 1363, that Rule 46 had been complied with and the point preserved for review where counsel made his point in a colloquy with the judge and had been overruled, even though counsel did not except to the ruling or the charge. The court stated, 194 F.2d at page 519: " * * * Moreover, the plaintiff's failure later to repeat the objection, or to conform literally to Rule 51, was not a 'waiver' of the ruling against him; he had taken his position, had lost, and he was free thereafter to win a verdict if he could within the narrower borders of the case that the judge had laid down for him. Nothing goes further to disturb the proper atmosphere of a trial than reiterated insistence upon a position which the judge has once considered and decided." [1] We hold that these questions raised by plaintiff were properly preserved for review.

In view of the fact that a new trial is to be held, we think we should consider plaintiff's contentions as to alleged error in admitting evidence which it claims was irrelevant, immaterial and prejudicial. Of course whether certain testimony is relevant and material often depends on the testimony which has been received earlier in the trial. Testimony standing alone which might appear immaterial may be in explanation of testimony that has gone before.

Plaintiff divides the evidence which it claims was improperly received into three categories: (1) as to difficulty in identifying houses in Flowerfield; (2) as to business relationships between plaintiff or Advance and Community prior to acceptance of individual loans on properties in Lakewood; (3) that Smith did not receive substantial fees or money from Westowns, Community or others.

Plaintiff argues there is no causal connection between the alleged difficulty of identifying houses and Smith's improper payouts, and that its losses did not occur because of any difficulty in identifying residence properties in Flowerfield. However, Jacobs answered ten questions on this subject without any objection having been made. Witnesses Miller and Fisher also answered similar questions without objections and without any motion to strike having been made. Part of Smith's duties were to inspect properties on which loans had been made. We hold that the receipt of this evidence was not error.

As to previous business relationships by plaintiff or Advance with Community, plaintiff claims Smith was dishonest because of the manner in which he handled payments for street improvements and utilities in Lakewood. Defendant argued that if there was a shortage in funds allocated for such purposes, the only other place where additional funds could come from was Community—that this was known to Advance, but that from previous business relationships Advance well knew that Community was not in position to furnish such funds. We think admitting such evidence was not error.

The third category had to do with testimony that Smith did not receive fees or money from those with whom he was dealing. Considerable evidence was received as to an automobile purchased by Smith which, although he paid for it, was obtained through the intercession of the president of Westowns, it appearing that there was a scarcity of new cars at the time. We think there was no error in receiving this testimony.

The cause is reversed and remanded for a new trial.

[1]. See also: United States v. Konovsky, 7 Cir., 202 F.2d 721.