**FEDERAL DEPOSIT INSURANCE CORPORATION as Manager of the FSLIC Resolution Fund, Plaintiff,**

v.

**CNA CASUALTY OF PUERTO RICO, Defendant.**

**Civ. No. 90–2315 (JP).**

United States District Court
D. Puerto Rico.

Nov. 22, 1991.

Enrique Peral Soler, Muñoz, Boneta, González, Arbona, Benítez & Peral, Hato Rey, P.R., for plaintiff.

María E. Picó, Rexach & Picó, Miramar, P.R., for defendant.

## OPINION AND ORDER

PIERAS, District Judge.

This is an action by the Federal Deposit Insurance Corporation ("FDIC"), as manager of the FSLIC Resolution Fund, seeking payment of a claim made under a fidelity bond issued by CNA Casualty of Puerto Rico ("the Underwriter") and for damages as a result of the Underwriter's alleged bad faith in adjusting the claim. The Court has before it defendant's Motion for Summary Judgment and the plaintiff's opposition thereto.

### I. THE FACTS

In 1981 CNA issued a Savings & Loan Blanket Bond ("the fidelity bond") to Home Federal Savings & Loan Association of Puerto Rico ("Home Federal") providing for indemnification as a result of dishonest or fraudulent acts of employees of the insured. On October 4, 1984, the Federal

Home Loan Bank Board ("FHLBB") appointed the Federal Savings & Loan Insurance Corporation as receiver for Home Federal following the discovery of substantial losses incurred by that institution. On October 6, 1984, the FSLIC-receiver took possession of Home Federal and pursuant to Section 547.7 of the Rules and Regulations for the Federal Savings & Loan System succeeded all the rights, titles, powers and privileges of Home Federal. On October 6, 1984, FSLIC-receiver transferred to the FSLIC in its corporate capacity, the receiver's rights to any claims, demands or causes of action against the former controlling persons, directors, and offices of Home Federal or their sureties. Pursuant to Section 215 of the Financial Institutions Recovery, Reform and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183, 12 U.S.C. § 1821(a), the FDIC as Manager of the FSLIC Resolution Fund succeeded to all claims of the FSLIC that arose before August 9, 1989.

The plaintiff alleges that on August of 1984, the FHLBB gave notice to the defendant of a loss which resulted in a claim under the bond. On February 7, 1985, the FSLIC submitted its proof of loss to the Underwriter. Shortly after notice of the loss was given, the Underwriter appointed Mr. Harry N. Wood, of Harcourt Ltd., to investigate and adjust the claim of the FSLIC. The plaintiff further alleges that, by October 3, 1990, the Underwriter had not yet informed the FDIC whether it would pay or deny coverage for the claim made under the bond. Thus, on October 4, 1990, the FDIC, as Manager of the FSLIC Resolution Fund, filed the Complaint in this case. In its Complaint, the FDIC alleges that Mr. Jaime Dávila, the president of Home Federal, committed dishonest or fraudulent acts within the meaning of the bond in connection with a transaction involving a $14 million loan to Universal Tank & Iron Works, Inc. As a result of Mr. Dávila's dishonest or fraudulent conduct in connection with the Universal Tank loan transaction, the FSLIC suffered losses in excess of $9 million. In November of 1988 FSLIC settled several claims against Shearson American Express, Inc. and Shearson American Express (Puerto Rico), Inc. in Civil Case No. 84–0758 (RLA).

The defendant CNA alleges that this action is in complete contravention of the plaintiff's prior assertions that Miguel Serrano and Shearson American Express were the actual cause of the Home Federal's demise. Thus CNA contends that its behavior has not been in bad faith. The Motion for Summary Judgment principally alleges that: 1) the plaintiff should be judicially estopped from bringing this complaint, by their admissions in prior pleadings; 2) as a matter of law Dávila's conduct does not rise to the level of dishonest or fraudulent acts as defined in the bond; and 3) the claim is barred due to non-compliance with the notice and proof of loss provisions of the bond.

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

A motion for summary judgment is appropriate when:

[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). *Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir.1989); *see e.g., Medina–Muñoz v. R.J. Reynolds*, 896 F.2d 5 (1st Cir.1990). A "genuine" issue is one that is dispositive, and must therefore be decided at trial. *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A "material" fact is one which affects the outcome of the suit and must be resolved before attending to related legal issues. *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d at 181.

Essentially, Federal Rule of Civil Procedure 56(e) mandates that summary judgment be entered against a party who fails to establish the existence of an element essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106

S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Thus, the burden is first on the movant, to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. at 325, 106 S.Ct. at 2554. Thereafter, the burden shifts to the nonmovant to establish the existence of a genuine material issue. *Brennan v. Hendrigan,* 888 F.2d at 191. The nonmovant, however, cannot rest upon mere allegation or denial of the pleadings. Fed.R.Civ.P. 56. In the instant case, a number of genuine issues of material fact exist which require evaluation by a jury, thus the defendants' Motion for Summary Judgment must be denied.

## III. JUDICIAL ESTOPPEL DOCTRINE

The defendant asserts that the plaintiff should be precluded in this case from alleging that Home Federal President Dávila committed fraudulent or dishonest acts under the CNA fidelity bond, because plaintiff asserted a different position in a prior litigation. Specifically, FSLIC (which the FDIC manages) was a co-defendant in a civil RICO suit brought by the Municipality of Ponce in 1984 before Judge Acosta, *Municipality of Ponce v. Shearson–American Express, et al.,* Civ. No. 84–0758 (RLA). In the FSLIC Cross–Claim against co-defendants: Shearson American Express, Inc., Shearson American Express, Inc. (Puerto Rico), Miguel Serrano Arreche, Ponce M.A. Developers, Inc., Owne Beverage, North American International, Inc., Juan Luis Boscio, and William Stamps; in addition to other FSLIC pleadings in Civ. No. 84–0758 (RLA), FSLIC focused upon the wrongdoing of Shearson and Serrano. Defendant CNA asserts that the position of those earlier pleadings, now judicially estops the plaintiff from asserting the position that Dávila was responsible for the fraud committed upon Home Federal.

 The doctrine of judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a posi-

tion previously taken by her in the same or some earlier legal proceeding.[1] The function of the judicial estoppel doctrine is to protect the integrity of the courts, because an effective legal system depends upon norms of candor and responsibility. *Patriot Cinemas, Inc. v. General Cinema Corp.,* 834 F.2d 208, 214 (1st Cir.1987). *See also Hurd v. Di Mento & Sullivan,* 440 F.2d 1322 (1st Cir.), *cert. denied,* 404 U.S. 862, 92 S.Ct. 164, 30 L.Ed.2d 105 (1971). "If parties feel free to select contradictory positions before different tribunals to suit their ends, the integrity and efficacy of the courts will suffer." *Id.*

 The doctrine is applied only when the positions are truly inconsistent—that is, the truth of one must necessarily preclude the truth of the other.[2] In order to utilize the doctrine, the two positions in question must be diametrically opposed. 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure,* § 4477 (1981). In the instant case, the Court's review of the prior pleadings does show that FSLIC focused upon the wrongdoing of Serrano and Shearson even though Dávila was another co-defendant against whom a cross-claim could have been filed. Yet, the focus upon Serrano and Shearson cannot be strictly interpreted as an assertion that Dávila was not involved at all in the wrongdoing. As a matter of fact, the FSLIC Amended Cross–Claims Against Shearson–American Express, Inc., et al., expressly states that: "The cross-plaintiff cannot presently state with exact particularity the precise extent, dates and persons participating in the cover-up and obstruction of justice alleged herein, except to the extent testified by Pujol, and need further discovery in order to allege such facts with more particularity." FSLIC Amended Cross Claim at 19–20, in Civ. No. 84–0758 (RLA).

Even though FSLIC's 12th Affirmative Defense in Answer to Shearson Cross–Claims states the following: "Dávila and Home Federal acted without any intent to

---

1. Rand G. Boyers, *Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel,* 80 Nw.U.L.Rev. 1244 (1986).

2. Note, *The Doctrine of Preclusion Against Inconsistent Positions in Judicial Proceedings,* 59 Harv.L.Rev. 1132, 1136 (1946).

defraud or scienter concerning *any* schemes or artifices to defraud devised and/or carried out by Serrano, Stamps and Juan Luis Boscio;" the statement was made with reference to the repurchase agreement transactions discussed by Shearson in its Cross Claim against FSLIC, which are not at issue in this case. The plaintiff in this case claims that it is entitled to coverage under the CNA Bond only with regard to the Universal Tank loan transaction in which Dávila was involved. Furthermore, defendant CNA cannot claim to have been misguided by the FSLIC 12th Affirmative Defense focus upon Serrano, when the pleading itself was filed on August 17, 1987—two years after FSLIC submitted its February 7, 1985, Proof of Loss Claim to CNA, detailing Dávila's dishonest acts under the Bond.

■ Moreover, the doctrine of judicial estoppel requires that the party now attempting to contradict her previous statement, was successful in maintaining the original position in the prior proceeding.[3] Prior success can be measured by whether the party prevailed upon the merits, or whether the preceding court "accepted" the position now being contradicted. As FSLIC settled several of its claims in the prior proceedings (Civ. No. 84–0758 (RLA)) and the Shearson cross-claims against Dávila were dismissed without prejudice (Civ. No. 84–0758 (RLA) docket No. 466),[4] it is tenuous indeed to claim that FSLIC was a prevailing party, or that the court accepted its position. Therefore, summary judgment cannot be entered on behalf of the defendant based upon the doctrine of judicial estoppel. Even though entry of summary judgment is not appropriate, the defendant may utilize the pleadings of prior proceedings as evidence to impeach a witness and attack her credibility in this case. *US Life Corp. v. United States Life Ins. Co.*, 560 F.Supp. 1302, 1305 (N.D.Tex.1983); Fed.R.Evid. 613.

---

**3.** *See supra* note 1 at 1251.

**4.** Plaintiff Municipality of Ponce also dismissed its claims against Dávila with prejudice. (Civ. No. 84–0758 (RLA) docket No. 183).

## IV. FIDELITY BONDS

■ A fidelity bond, or fidelity insurance as the term is usually employed, is a contract whereby, for a consideration, one agrees to indemnify another against loss arising from the want of honesty, integrity, or fidelity of an employee or other person holding a position of trust. A fidelity bond covering losses caused by "fraud or dishonesty" is ordinarily held to extend beyond acts which are criminal, the words being given a broad meaning and being construed most strongly against the surety or insurer. *Irvin Jacobs & Co. v. Fidelity & Deposit Co.*, 202 F.2d 794 (7th Cir.1953). Fidelity bonds, which are generally deemed to partake of the nature of insurance contracts, are subject to rules of construction applicable to insurance policies generally. *American Surety Co. v. Pauly*, 170 U.S. 133, 18 S.Ct. 552, 42 L.Ed. 977 (1898);[5] *Boston Mut. Life Ins. v. Fireman's Fund Ins.*, 613 F.Supp. 1090, 1097 (D.C.Mass. 1985).

■ The words "fraud or dishonesty" when used with reference to conduct covered by a fidelity bond, are given a broad meaning. *First Nat'l Bank Co. v. Ins. Co.*, 606 F.2d 760, 768 (7th Cir.1979). The words have been deemed to include any act showing a lack of integrity; a breach of trust; or an abstraction of funds together with deceit and concealment. *United States Fidelity & Guar. Co. v. Bank of Thorsby*, 46 F.2d 950 (5th Cir. 1931). Yet, mere negligence, mistake, or error in judgment does not constitute "fraud" or "dishonesty" within the terms of a fidelity bond. *Irvin Jacobs*, 202 F.2d at 794. Wilfulness and an intent to deceive must be present in order for an employee's actions to be dishonest or fraudulent, even though it need not involve criminal liability nor result in personal profit. *First Nat'l Bank of Sikeston v. Transamerica Ins.*

---

**5.** As insurance contracts are encompassed by the general principles of contract law, the plaintiff's cause of action for breach of covenant of good faith and fair dealing, is valid in the context of a fidelity bond. 31 P.R.L.A. §§ 3375 and 5141.

*Co.,* 514 F.2d 981, 987 (8th Cir.1975). Thus, the characterization of the employee's conduct is a question of fact for a jury. *Rock Island Bank v. Aetna Casualty & Sur. Co.,* 706 F.2d 219 (7th Cir.1983). It is also for the jury to pass upon the attendant facts and circumstances in determining whether the employee entertained a dishonest intent in performing certain acts, so as to make them dishonest within the meaning of the bond. *Irvin Jacobs & Co. v. Fidelity & Deposit Co.,* 202 F.2d 794 (7th Cir. 1953); *Liberty Nat'l Bank v. Aetna Life & Casualty Co.,* 568 F.Supp. 860, 868 (D.C.N.J.1983) (summary judgment not appropriate where reasonable persons might differ on question of intent). Thus the parties dispute as to whether Dávila's behavior can be construed as dishonest under the bond is a genuine issue of material fact upon which summary judgment cannot be entered.

Fidelity bonds which contain a provision requiring the insured employer to give notice and proof of loss to the surety or insurer within a specified time, are construed in favor of the insured when any ambiguity in the bonds arises. *Hartford Accident & Indem. Co. v. Swedish Methodist Aid Ass'n,* 92 F.2d 649 (7th Cir.1937). The purpose of notice requirement is the goal of vigilance on the part of the insured employer, and to afford the surety an opportunity for investigation and minimization of loss. *Murray v. American Sur. Co.,* 69 F.2d 147 (5th Cir.1934). The fidelity bond in this case provides in section 4. that:

> At the earliest practicable moment after discovery of any loss hereunder the Insured shall give the Underwriter written notice thereof and shall also within six months after such discovery furnish to the Underwriter affirmative proof of loss with full particulars.... It is understood and agreed that in case of any loss hereunder discovered either by the Insured or the Federal Home Loan Bank of which the Insured is a member, the said Federal Home Loan Bank is empowered to give notice thereof to the Underwriter within the period limited therefor.

It is generally held, that unless a fidelity bond requires a particular form of notice of loss, any notice of a claim is sufficient if it puts the surety or insurer on notice and enables it to make the necessary investigation to determine the merits of the claim. 23 A.L.R.2d 1091, § 10. In this case, the Federal Home Loan Bank filed a written Notice of Loss on August 7, 1984, on the plaintiff's behalf. *See* Exhibit R, Defendant Motion for Summary Judgment. Six months later the Federal Home Loan Bank filed the proof of loss as required by the fidelity bond. *See* Exhibit E, Defendant Motion for Summary Judgment.

The defendant contends that the notice of loss was untimely, because the plaintiff allegedly had knowledge of Dávila's wrongdoing sometime in September 1983. According to the defendant, FSLIC's and FHLBB's knowledge in September 1983 that the Universal Tank loan was not a sound transaction is an indication of their knowledge of Dávila's dishonesty. Yet many of the documents in the record support the plaintiff's allegation that Dávila was not directly suspected of wrongdoing until August 1984 because the extent of his participation was not clear up until that time. *See* Exhibit 29, Plaintiff's Opposition to Summary Judgment, Home Federal Report of Examination of November 28, 1983 (continued reliance upon Dávila representations regarding financial status of bank); Exhibit 31, Plaintiff's Opposition to Summary Judgment, Federal Home Loan Bank Board letter of February 16, 1984 ("We believe a formal investigation is warranted to determine if there is any criminal wrongdoing on the part of the directors...."); Exhibit 34, Plaintiff Opposition to Motion for Summary Judgment, Report of Loss of Home Federal by Harry Wood of April 29, 1985 ("At present there is no indication that any of the directors, officers or persons directly employed were involved in the loss").

Whether notice of wrongdoing is untimely is a question for the jury. *Rock Island Bank v. Aetna Casualty & Sur. Co.,* 706 F.2d 219 (7th Cir.1983); *Merchants & Farmers State Bank v. Fidelity & Casualty Co.,* 791 F.2d 1141 (5th Cir. 1981). An employer is not required to pro-

vide notice until it has *actual* knowledge of the dishonest act. *American Sur. Co. v. Pauly*, 170 U.S. 133, 18 S.Ct. 552, 42 L.Ed. 977 (1898) (emphasis added). Notice is not required when the employer merely suspects or has reason to suspect wrongdoing. *Id.; see also FDIC v. Aetna Casualty & Sur. Co.*, 426 F.2d 729 (5th Cir.1970). It is a question for the jury to determine whether the information possessed by the employer amounts to actual knowledge of the wrongdoing.[6] *United States Fidelity & Guar. Co. v. Barber*, 70 F.2d 220 (6th Cir.1934); *Boston Mut. Life Ins. v. Fireman's Fund Ins.*, 613 F.Supp. 1090, 1097 (D.C.Mass.1985). Therefore, summary judgment cannot be entered as to the issue of timely notice, when there is a genuine issue of material fact regarding the actual knowledge the plaintiff had regarding the loss.

 Furthermore, unless it is otherwise provided in the fidelity bond, it seems that even the strongest suspicion does not amount to knowledge nor discovery of dishonesty, and that nothing short of actual discovery of dishonesty or positive breach of an imperative condition by the insured employee will terminate the bond as to the defaulting employee. *FDIC v. Lott*, 460 F.2d 82 (5th Cir.1972) (fact that bank directors may have had knowledge of irregularities and violations by the bank president, i.e. holding of excessive cash items and exceeding the legal loan limit; was not by itself sufficient knowledge on the part of the directors to activate the bond's provision—finding of fact for the jury). Therefore, termination of the fidelity bond is also a genuine issue of material fact over which the jury has province in this case.

Wherefore, in view of the foregoing, the Motion for Summary Judgment is hereby DENIED. The Pretrial Conference and Jury Trial dates remain respectively set for December 3, 1991, and December 10, 1991.

IT IS SO ORDERED.

---

6. Thus it logically follows that the issue of whether the plaintiff had sufficient knowledge to ratify the transaction loss at issue, is also a question of fact for the jury.