**PROGRESSIVE CASUALTY
INSURANCE COMPANY,
Plaintiff,**

v.

**FIRST BANK, Defendant.**

No. Civ. A. H–91–3002.

United States District Court,
S.D. Texas,
Houston Division.

Aug. 27, 1993.

Michael Keeley, Dallas, TX, for plaintiff.

Bruce D. Beach, Houston, TX, for defendant.

## OPINION ON SUMMARY JUDGMENT

HUGHES, District Judge.

1. *Introduction.*

Progressive Casualty Insurance Company indemnified First Bank through a standard banker's blanket bond. The bank cannot recover on the bond for the acts of its president who caused a loss to the bank through personal failings and business neglect. An employee's acts of misfeasance, even of gross incompetence, are not acts of infidelity with the manifest intent to injure the bank and to benefit himself.

2. *Background.*

Progressive issued a bond to the bank covering loss from employee dishonesty or fraud. While he was the president of the bank, Henry P. Massey omitted facts material to the underwriting risk on some of the loans he originated. The bank lost about $2 million on those loans.

The bank fired him and filed a claim on the bond. The insurance company denied the claim because the claim failed to meet the condition that the acts generating the loss either be intended to injure the bank or be designed to profit the banker. The bank asserts that general misbehavior is sufficient under the bond. As the bond requires, the insurance company wants the bank to establish that the banker received a financial benefit of at least $2,500 from making the bad loans through collusion and that he intended to cause the bank a loss.

Massey made loans, not only without adequate documentation, but essentially with no documentation. Massey's successor as president swore only that Massey was doing "crazy things" and that "no one firmly believed Massey was actually dishonest." The bank told Progressive that Massey was an abysmally poor banker, he failed to follow internal procedures, and he misrepresented the condition of the borrowers and the value of their collateral. The bank says it first learned of this misconduct when a routine FDIC examination revealed that Massey took an assignment of a $750,000 loan from a bank where he had once worked and did not record his repurchase of $500,000 in the bank's books.

The bank began discovering other loans that Massey had made without loan committee approval. He loaned money to personal friends on favorable terms. When other borrowers fell into difficulty, he lowered their interest rates and extended the maturities. He failed to take possession of stock pledged to the bank. He misrepresented the financial condition of borrowers and overvalued collateral. For no apparent banking reason, he released collateral on outstanding loans.

### 3. The Bond's Language.

Progressive agreed to indemnify First Bank for:

(A) Loss resulting directly from dishonest or fraudulent acts committed by an Employee acting alone or in collusion with others.

Such dishonest or fraudulent acts must be committed by the Employee with the manifest intent:

(a) to cause the insured to sustain such loss; and

(b) to obtain financial benefit for the Employee or another person or entity.

However, if some or all of the insured's loss results directly or indirectly from Loans, that portion of the loss is not covered unless the Employee was in collusion with one or more parties to the transactions and has received ... a financial benefit with a value of at least $2,500.

### 4. Paucity of Evidence.

After twenty months of litigation, the bank failed to produce evidence of Massey's financial benefit, motive, or indeed scheme. The bank infers that Massey would have acted the way he did only if he had a secret gain. On the contrary, in every period of excess, like a boom, the hard lessons of experience and training, as well as common sense, are ignored. Sound practices give way to loose practices. The collapse of oil prices in 1986 produced a banking crisis. Many of the honest loans—loans made in what then passed for the normal course of business in Texas banks—were speculative to impossible credit risks. See, e.g., Federal Deposit Ins. Corp. v. St. Paul Fire and Marine Ins. Co., 942 F.2d 1032 (6th Cir.1991); First Fed. Sav. & Loan Ass'n of Salt Lake City v. TransAmerica Ins. Co., 935 F.2d 1164 (10th Cir.1991); Standard Chartered Bank v. Milus, 826 F.Supp. 310 (D.Ariz.1990).

There is simply no evidence that Massey received a financial benefit or that he intended for the bank to sustain a loss. The bank's cashier reported the transactions as carelessness, not dishonesty. No proof is offered to show that she erred in that report or in the one to the FDIC. The bond is not credit insurance to protect the lender against improvident or reckless extensions of credit. Calcasieu–Marine Nat'l Bank of Lake Charles v. American Employers' Ins. Co., 533 F.2d 290, 299 (5th Cir), cert. denied, 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976).

Massey may have been imprudent in taking improper risks and in making loans to friends, and he was clearly wrong in not disclosing material facts to the board and in not recording all transactions in the proper records, but without more, only speculation can turn that conduct into dishonesty or malice.

### 5. Collusion and Financial Benefit.

When a banker loans money that the borrower ultimately does not have to repay, the borrower gets the benefit. The bond requires more than a borrower's gain. There must be collusion, at least inferable, from the banker's personal secret gain.

The bank does not allege borrower dishonesty. The bank's only complaint is that Massey violated loan policies and violated other bank policies in covering his original improper actions. These violations in no way implicate the borrower. Even brothers-in-law may borrow if someone will lend when all others will not. Being a bad credit risk is not dishonesty. *Bank*, 826 F.Supp. 310.

The bank admits that it has no tangible evidence of collusion or gain, like a debtor's cancelled check to Massey. Despite a lack of knowledge, the bank insists that the totality of the circumstances compel a conclusion of dishonesty. Because the banker has no acceptable explanation for his acts, the bank theorizes he must have received a direct benefit. Judgments, however, do not rest on evidence that does not go beyond conjecture. *Home Indem. Co. v. Gonzalez*, 383 S.W.2d 857, 860 (Tex.Civ.App.—San Antonio 1964, writ ref'd n.r.e.). To be within the terms of the fidelity bond, liability for dishonesty must be something more than bad judgment, whether called negligence, mistake, carelessness, or incompetence. *FDIC v. CNA Casualty of Puerto Rico*, 786 F.Supp. 1082, 1087 (D.P.R.1991); *Eglin Nat'l Bank v. Home Indem. Co.*, 583 F.2d 1281, 1285 (5th Cir. 1978); *Irvin Jacobs & Co. v. Fidelity & Deposit Co. of Maryland*, 202 F.2d 794, 798 (7th Cir.1953). The bank's approach, "We must have been cheated because we lost a lot of money," is unfortunately all too common in this era of freedom from accountability. The magnitude of Massey's errors equals the board's in hiring him.

6. *Conclusion.*

Because the bank has not shown that the banker intended to cause the bank a loss or that he benefitted financially from his omissions and ineptness, it will not recover on the bond. Fidelity and competence are different. First Bank will take nothing from Progressive Insurance Company.