## UNITED STATES FIDELITY & GUARANTY CO. v. BANK OF THORSBY.

### No. 5843.

Circuit Court of Appeals, Fifth Circuit.
Feb. 16, 1931.

Rehearing Denied March 19, 1931.

Phares Coleman, of Birmingham, Ala., Lawrence F. Gerald, of Clanton, Ala., and M. C. Stewart, of Birmingham, Ala., for appellant.

B. P. Crum, of Montgomery, Ala., G. C. Walker and Grady Reynolds, both of Clanton, Ala., and William H. Hill, of Montgomery, Ala., for appellee.

Before BRYAN and WALKER, Circuit Judges, and HOLMES, District Judge.

HOLMES, District Judge.

The appellee recovered a judgment against the appellant for $14,724.34 on a surety bond executed by the latter for the benefit of the former, guaranteeing the fidelity of Claude C. Driskill, cashier of the bank. By the terms of the bond, the guaranty company, in consideration of a stipulated annual premium, agreed to make good to the Bank of Thorsby any loss which it might "sustain by reason of any act of personal dishonesty, forgery, theft, larceny, embezzlement, wrongful conversion or abstraction on the part of" said cashier committed after the 15th day of February, 1927.

The case was submitted to a jury under instructions by the court. The errors assigned are with reference to the same and to the admissibility of certain evidence.

The testimony showed that the appellee was a small bank in the Town of Thorsby, Ala., with a capital of $15,000 and a surplus of about $6,000. During the fall of 1927, Driskill, in willful disregard of a resolution of the board of directors, which prohibited the cashier from making any loans, and in flagrant violation of a state law, permitted J. D. Clecker, a cotton buyer and one of the customers of the bank, to overdraw his account in various sums, aggregating $13,800; subsequently reduced to $13,275. The judgment appealed from is for that sum with interest thereon.

When he became cashier, Driskill's attention had been specifically called to this resolution, and, in addition, he had been instructed by the president not to "make any loans of any size" without first putting them before the board of directors or the president for approval.

The statute referred to is section 6339 of the 1923 Code of Alabama, which forbids a loan to any one in excess of 10 per cent. of the capital and surplus without good security, or more than 20 per cent. to any person or firm under any circumstances.

The transactions with Clecker in their most favorable aspect were intentional violations of this statute and of specific instructions, and amounted to loans in the form of overdrafts secretly made by the cashier, without security of any kind, to a financially irresponsible party in an amount so excessive as to equal almost the entire capital stock of the bank.

The court charged the jury that the obligation of a surety was not limited to such losses as resulted from criminal acts, such as larceny or embezzlement, but that the words, "personal dishonesty," had a broader meaning, and might include any acts which evinced a want of integrity and an intentional breach of trust. The instruction was proper, as it was not necessary that the cashier should have acted with the purpose of personal profit. Any illegal or unauthorized taking or withdrawal of the funds of the bank, intentionally perpetrated by the employee, wheth-

er for the benefit of himself or of another, was a wrongful conversion or abstraction and an act of personal dishonesty which constituted a breach of the bond. Brandon v. Holman (4th Cir.) 41 F.(2d) 586; United States Fidelity & Guaranty Company v. Egg Shippers' Company (8th Cir.) 148 F. 353.

■ It is not material that any other officer or agent of the bank knew of, or even participated in, the wrongful transactions of the cashier. The guarantor is responsible for the direct and proximate consequences of Driskill's dishonest conduct. U. S. F. & G. Co. v. Walker (5th Cir.) 248 F. 42.

■ False entries on the books and a series of sight drafts on a banking correspondent in Birmingham were successfully resorted to by Driskill to conceal his wrongful transactions with Clecker until early in the year 1928, when, being called upon by the president to explain some questionable matter that had come to light, the cashier made a statement, denominated by himself at the time as a confession, in which he said he was short in the sum of $13,725, and that he did not know what he had done with the money, that it had occurred over a period of several months. Testimony as to such entries and admissions were received in evidence against the guaranty company at the instance of the plaintiff over the objections of the defendant. The action of the court in admitting the same is assigned as error.

The fallacy in this assignment consists in the fact that liability was not predicated upon the false book entries or the subsequent admissions, but upon the wrongful conversions or abstractions in the form of overdrafts. It was the unlawful taking of the funds of the bank and not the false entries or incriminating admissions that caused the loss. The latter were admissible for the purpose of showing the intention and motive of the employee in committing the wrongful act or series of acts that actually created the shortage. Driskill was the principal and the appellant his surety. The acts were done and the declarations made in connection with his duties, while in the service of the employer, and as explanatory of his conduct in performing that service. Guarantee Company v. Phenix Insurance Company (C. C. A.) 124 F. 170; 22 Corpus Juris, p. 405, par. 483; United States v. Gaussen, 19 Wall. 198, 22 L. Ed. 41.

■ Under the evidence in the case, it was for the jury to say whether this was an honest loss which the bank sustained, or whether it resulted from the personal dishonesty or even embezzlement of the cashier. The case was fairly submitted to them under proper instructions by the court, and we see no reason to disturb the verdict.

The judgment is affirmed.