## NATIONAL SURETY CO. v. ALABAMA FARM BUREAU COTTON ASS'N.

### No. 6852.

Circuit Court of Appeals, Fifth Circuit.

Feb. 10, 1934.

Fred S. Ball, of Montgomery, Ala., for appellant.

B. P. Crum, of Montgomery, Ala., and Harry P. Daily, of Fort Smith, Ark., for appellee.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

FOSTER, Circuit Judge.

This is an appeal from a judgment entered on a verdict, awarding a recovery of $52,066 against appellant for liability on a surety bond covering the employees of appellee. There are 51 assignments of error. As usual, when assignments are so multiplied, they do not tend to clarify the issues and we will not attempt to discuss them in detail. Appellant did not move for the general affirmative charge, but requests for instructions had the same effect as to certain items. Under these assignments the entire evidence has been brought up in the record. The record supports the following conclusions.

Appellee, the Alabama Farm Bureau Cotton Association (hereafter called Alabama Association), was organized in 1922, for the co-operative marketing of cotton, under the provisions of an act of the Alabama Legislature. Headquarters were established at Montgomery and Allen Northington was made general manager and secretary. The National Surety Company executed an indemnity bond to the Alabama Association, guaranteeing it against pecuniary loss sustained through any dishonest, fraudulent, or criminal act by any employee, alone or in connivance, in any position, anywhere, committed after the 1st day of August, 1923. Northington was named in the schedule of employees attached. From time to time other corporations of a similar nature were added to the bond as employers. By a rider, dated November 5, 1930, it was provided that any loss for which the surety company might be liable under the bond should be paid only to the Alabama Association, original employer, for its own account or for the account of additional employers named therein. All settlements and payments so made to be final and conclusive and no such additional employer to have the right to make any claim or bring any action against the surety company. The bond provided that the employer should, within 10 days after the discovery of any probable claim, notify the guarantor at its home office, by registered letter, confirming same, within three months thereafter, by sworn itemized statement. In addition to his employment by the Alabama Association, Northington was also president, and his brother was vice president, of the First National Bank of Prattville, a small town a short distance from Montgomery. There was evidence tending to show that while this bank was in a failing condition, to the knowledge of Allen Northington, he made large deposits in said bank of funds of the Alabama Association, and when it ultimately closed it owed the Alabama Association about $118,000. Northington also used this bank to enable him to manipulate the funds of the Alabama Association, receiving fraudulent deposit slips, and certificates of deposit, from the bank when no deposits, purporting to be covered by the same, were actually made. And he received certified checks from the bank, to the order of various members of the Alabama Association, which checks he retained in his custody and did not send to the payees. There was evidence tending to show other fraudulent transactions which need not be reviewed in detail. The board of directors of the Alabama Association were mainly farmers, residing in different parts of the state. Northington was a man of good reputation and considered competent by them. He was virtually in complete control of the Alabama Association. Audits were made of the books of the Alabama Association, under the direction of Northington, and these were exhibited to the directors at meetings held from time to time. The American Cotton Co-operative Association, with headquarters at New Orleans, rendered financial assistance to the Alabama Association. The proceeds of the bond were assigned to this association as collateral security. The American Cotton Co-operative Association, in 1930, adopted a resolution requiring semiannual audits of the Alabama Association. A call was made for an audit as of January 1, 1931. This precipitated a crisis. Northington endeavored to influence a favorable audit but was unsuccessful. A meeting of the board of directors of the Alabama Association was called and held on May 26, 1931. At that time it was disclosed to them that Northington had been guilty of dishonesty over a period of several years, causing loss to the Alabama Association. Notice was given to appellant within 2 days after this meeting and then was followed within 90 days by the filing of an itemized sworn proof of loss, showing the loss to be in excess of $140,000. It is not necessary to discuss the details of the claim. There was sufficient evidence before the jury tending to show that the loss had been incurred while the bond was in force and, omitting a number of items objected to on various grounds by appellant, that there was more loss than the penalty of the bond.

Appellant contends that because the bond had been assigned to another appellee had no interest in it; that it could not maintain suit for its own benefit; that all of the obligees should have been joined as plaintiffs; that the board of directors of appellee had failed

to use due diligence to discover the loss; that therefore the notice and subsequent itemized proof of loss were not in time.

 We think appellant was entitled to sue upon the bond. The bond specifically gives that right and although the proceeds had been assigned to the American Cotton Co-operative Association, the legal title and right to sue were still in appellee. American Ins. Co. v. Newberry, 215 Ala. 587, 112 So. 195. While the court refused special charges requested on the question of due diligence, that point was fully and fairly covered in the general charge, to which there was no exception. The questions whether the loss had occurred through the dishonesty of Northington and whether the Alabama Association was guilty of failing to use due diligence were for the jury. United States Fid. & Guaranty Co. v. Bank of Thorsby (C. C. A.) 46 F.(2d) 950. Of course, the knowledge of Northington was not attributable to the Alabama Association.

The record presents no reversible error. Affirmed.