583 F.2d 1281
 EGLIN NATIONAL BANK, Plaintiff-Appellee,
v.
The HOME INDEMNITY COMPANY, Defendant-Third Party
Plaintiff-Appellee-Cross Appellant,
v.
Lewie TIDWELL, Third Party Defendant-Appellant-Cross Appellee,
v.
INTERNATIONAL INSURANCE COMPANY, Crum and Forster Group,
Third Party Defendant-Appellee.
 No. 76-4121.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 13, 1978.
 
 James G. Etheredge, Fort Walton Beach, Fla., for Tidwell.
 Charles R. Timmel, Fort Walton Beach, Fla., for Home Indem. Co.
 David A. Simpson, Fort Walton Beach, Fla., Joe J. Harrell, Pensacola, Fla., for Intern. Ins.
 John W. Morrison, Victor G. Savikas, Chicago, Ill., for Intern. Ins.
 Appeals from the United States District Court for the Northern District of Florida.
 Before RONEY, TJOFLAT and HILL, Circuit Judges.
 RONEY, Circuit Judge:
 
 
 1
 The sole issue in this Florida diversity case involves the interplay between a banker's blanket bond and a directors and officers liability insurance policy. The banker's bond provides coverage for losses caused by an employee's "dishonest or fraudulent" acts. The directors and officers liability policy excludes claims for "active and deliberate dishonesty committed . . . with actual dishonest purpose and intent." The district court ruled that the exclusion in the liability policy is co-extensive with the coverage provided by the banker's blanket bond so that, as a matter of law, Every loss covered by the banker's bond is by definition Excluded from coverage by the liability policy. We affirm.
 
 Background
 
 2
 Eglin National Bank sued the Home Indemnity Company to collect on a banker's blanket bond. Eglin alleged that it suffered a $126,000 loss when its former president, Lewie Tidwell, dishonestly issued two letters of credit without authorization and without following proper bank procedures. Home denied liability, claiming that Tidwell's acts were not "dishonest or fraudulent" within the meaning of its bond but were merely errors of judgment, bad banking practices, or carelessness.
 
 
 3
 In a third-party complaint against Tidwell, Home alleged that any liability it would have to Eglin would arise out of Tidwell's acts, so it would be entitled to indemnification from Tidwell. Tidwell's liability insurance carrier, International Insurance Company, was joined as a defendant, as permitted by Florida law. See Shingleton v. Bussey, 223 So.2d 713 (Fla.1969). Tidwell denied his acts were dishonest or fraudulent and cross-claimed against International alleging he was entitled to coverage under the terms of his liability policy.
 
 
 4
 The district court granted International's motion for summary judgment on the ground that any "dishonest or fraudulent" act which would cause Home to be liable to the bank would be excluded from coverage by its policy as a matter of law, so that it could not possibly be liable to Home or Tidwell.
 
 
 5
 At the trial on Eglin's claim against Home, a jury rendered a verdict for Eglin, specifically finding the bank's loss was caused by Tidwell's dishonest or fraudulent acts. Judgment was accordingly entered for Eglin against Home and for Home against Tidwell. Home has not appealed the judgment for Eglin. Tidwell appealed from the judgment for Home. Both Home and Tidwell appeal from the summary judgment granted International. Tidwell's brief and argument in this Court, however, have only addressed the summary judgment. Accordingly, Home's motion to dismiss Tidwell's appeal against it, carried with the case, is hereby granted for failure to file a brief or otherwise pursue the appeal, pursuant to 5th Cir. R. 9.
 
 
 6
 Thus, the sole issue on appeal is the summary judgment for International upon which Home and Tidwell are aligned. For simplicity, we will refer to their joint contentions simply as Home's.
 
 The Applicable Policy Provisions
 
 7
 The fidelity clause of Home's banker's blanket bond provides that Home will indemnify and hold Eglin National Bank harmless for "(l)oss through any dishonest or fraudulent act of any of the Employees" of the bank.
 
 
 8
 International's directors and officers liability insurance policy insures Tidwell himself (not the bank), for any claims against him for a "Wrongful Act." The policy defines "Wrongful Act" as
 
 
 9
 any actual or alleged error or misstatement or misleading statement or act or omission or neglect or breach of duty by the Insureds while acting in their individual or collective capacities, or any matter not excluded by the terms and conditions of this policy claimed against them solely by reason of their being Directors or Officers of the Company.
 
 
 10
 This broad definition standing alone would cover "dishonest or fraudulent" acts as well as negligent and other acts not covered by Home's policy. An exclusion of the International policy, which is the key to this case, withdraws some of this broad coverage. The exclusion provides that International is not liable for losses in connection with any claims against Tidwellbrought about or contributed to by the dishonesty of (Tidwell), however, notwithstanding the foregoing, (Tidwell) shall be protected under the terms of this policy as to any claims upon which suit may be brought against (him), by reason of any alleged dishonesty on the part of (Tidwell), unless a judgment or other final adjudication thereof adverse to (Tidwell) shall establish that acts of active and deliberate dishonesty committed by (Tidwell) with actual dishonest purpose and intent were material to the cause of action so adjudicated.[1]
 
 
 11
 In other words, International's policy at first excludes coverage for claims "brought about or contributed to by the dishonesty" of the insured, but then protects the insured against lawsuits alleging dishonesty unless the final adjudication against him establishes that the outcome rests on "acts of active and deliberate dishonesty committed . . . with actual dishonest purpose and intent," in which event the exclusion would be effective.
 
 Analyzing the Two Policies
 
 12
 Home contends that the phrase "dishonest or fraudulent act" in its policy is broader than the International exclusion phrase and that Home's language can include acts which show a want of integrity or breach of trust, not excluded by International. Home argues there Must be a difference between "dishonesty" and "active and deliberate dishonesty," since even International's policy apparently differentiates between them, covering the former and excluding the latter. Home therefore argues that International's policy does not exclude every act Home covers, but rather there is an area of overlapping coverage for acts of dishonesty of a lesser degree than "active and deliberate." Because of possible common coverage, it asserts that a factual determination of the nature of Tidwell's acts is necessary and that summary judgment was improper.
 
 
 13
 The district court held a factual determination unnecessary, deciding that if Tidwell's acts were sufficient to impose liability on Home, they would be excluded from coverage by International. The court found as a matter of law that the standard embodied in the insuring clause in Home's bond was precisely co-terminous with that in the exclusion clause of International's policy.
 
 
 14
 The present case is apparently the first case in any jurisdiction interpreting this aspect of a directors and officers liability policy.[2] In construing these two policies in this Diversity case, we apply Florida Law. See Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Travelers Indemnity Co. v. Holman, 330 F.2d 142, 151 (5th Cir. 1964). The only case, to our knowledge, to interpret "dishonest or fraudulent" in a banker's blanket bond or other fidelity bond context as a matter of Florida Law is Glens Falls Indemnity Co. v. National Floor & Supply Co., 239 F.2d 412 (5th Cir. 1965). Its interpretation is consistent with many cases in other jurisdictions which have construed "dishonest or fraudulent" in banker's blanket bonds. See generally 13 Couch on Insurance 2d §§ 46:40-46:42, 46:54-46:59 (Anderson ed. 1965).
 
 
 15
 Fidelity bonds covering losses caused by "dishonest or fraudulent acts" are to be broadly construed, and, as with other insurance contracts, any ambiguity is construed most strongly against the underwriter.[3] The employee's acts need not be criminal,[4] nor is it necessary that the employee personally benefit nor have intended to benefit from his wrongful conduct.[5] Nevertheless, as the cases universally recognize, in order for there to be liability on the bond, there must be something more than negligence, mistake, carelessness, or incompetence.[6]
 
 
 16
 Case law has established that willfulness and an intent to deceive are necessary elements for an employee's acts to be "dishonest and fraudulent": "In order to constitute fraud or dishonesty, it is necessary that the employee have the intent to deceive or cheat the employer." 13 Couch on Insurance 2d § 46:55.
 
 
 17
 Thus, in the Glens Falls case, Supra, this Court acknowledged that for an act to be "dishonest" within the meaning of a fidelity bond, "there must exist the Element of moral turpitude or want of integrity." 239 F.2d at 413 (emphasis added), Quoting Commercial Banking Corp. v. Indemnity Ins. Co., 1 F.R.D. 380, 382 (E.D.Pa.1940). The Court noted a prior Fifth Circuit case had approved a charge defining dishonesty as including "any acts which evinced a Want of integrity and an intentional breach of trust." Id. at 414 (emphasis added), Quoting United States Fidelity & Guaranty Co. v. Bank of Thorsby, 46 F.2d 950, 951 (5th Cir. 1931).
 
 The Court in Thorsby said:
 
 18
 Any illegal or unauthorized taking or withdrawal of the funds of the bank, Intentionally perpetrated by the employee, . . . was a wrongful conversion or abstraction and an act of personal dishonesty which constituted a breach of the bond.
 
 
 19
 46 F.2d at 951-952 (emphasis added). See also Sade v. National Surety Corp., 203 F.Supp. 680, 684 (D.D.C.1962) (citing Thorsby for the proposition that "there must be both 'a want of integrity and an intentional breach of trust,' " that is, "a compelling sense of conscious wrong" is required), Aff'd per curiam, 114 U.S.App.D.C. 281, 314 F.2d 286 (1963).
 
 
 20
 Similarly, in Federal Deposit Insurance Corp. v. Aetna Casualty & Surety Co., 426 F.2d 729 (5th Cir. 1970), we quoted with approval this language from a Texas Supreme Court opinion:
 
 
 21
 "To constitute fraudulent and dishonest conduct, the employee must have some degree of intent to perform the wrongful action. There must be the physical act plus the mental state for there to be fraud."
 
 
 22
 426 F.2d at 737, Quoting, Great American Insurance Co. v. Langdeau, 379 S.W.2d 62, 65 (Tex.1964).
 
 
 23
 The necessity of intent was also recognized by the district court in Arlington Trust Co. v. Hawkeye-Security Insurance Co., 301 F.Supp. 854 (E.D.Va.1969):
 
 
 24
 An essential element of either fraud or dishonesty is an intent to deceive. Such intent may be inferred from the officer's reckless disregard.
 
 
 25
 Id. at 858 (emphasis added) (citing, Inter alia, this Court's Glens Falls decision).
 
 
 26
 Home points to several cases which indicate that a fidelity bond's coverage for "dishonest or fraudulent" acts guarantees fair dealing and integrity by the employee and thus protects against any breach of trust by the employee. An examination of those cases reveals, however, that while such language is used in the opinions, all the cases involved fact situations from which the trier of fact could find that the employee had acted with intent.
 
 
 27
 Thus, in London & Lancashire Indemnity Co. v. Peoples National Bank & Trust Co., 59 F.2d 149 (7th Cir. 1932), the court made this statement as to the law:
 
 
 28
 If it indicates a reckless, willful, and wanton disregard for the interest of the employer if it be an act manifestly unfair to the employer and palpably subjects him to likelihood of loss a fact question of liability for loss thereby ensuing, as from a dishonest act, is fairly raised.
 
 
 29
 Id. at 152. The facts of that case, however, show that the bank officer knowingly took forged notes from his friend's bank in an amount five times greater than that bank's capital and slightly greater than the capital value of his own bank. He extended credit to the other bank even when he had "positive knowledge" it was in a desperate financial condition. Thus, despite the court's "manifestly unfair" language, it is clear the jury could have found willfulness and intent on these facts. See also Citizens State Bank v. Transamerica Insurance Co., 452 F.2d 199 (7th Cir. 1971); Irvin Jacobs & Co. v. Fidelity & Deposit Co. of Maryland, 202 F.2d 794 (7th Cir. 1953) (both quoting London & Lancashire's "manifestly unfair" language in situations showing employee intent to deceive).[7]
 
 
 30
 The Eighth Circuit in Fidelity & Deposit Co. of Maryland v. Bates, 76 F.2d 160, 171 (8th Cir. 1935), approved this jury instruction:
 
 
 31
 The word "dishonesty" is to be given a broad significance and includes any acts done in breach of the officer's duty to the bank and any wilful omissions to discharge the duties of his office. It does not embrace mere carelessness or negligence in the discharge of duty, but does include any acts done in violation of the officer's obligation to faithfully perform the duties of his office, whether such acts be criminal or not.
 
 
 32
 The facts, however, showed intentionally dishonest acts. The bank's cashier allowed a customer with whom he was in business to overdraw his account. He allowed another customer to overdraw his account and credited that customer's account for checks drawn on other banks which had not been paid for lack of funds, thus knowingly and "actively aid(ing)" in this check-kiting scheme. The cashier then took steps to conceal his actions. The court said the jury could find "dishonesty" from this evidence. See also First National Bank of Sikeston v. Transamerica Insurance Co., 514 F.2d 981, 987 (8th Cir. 1975).
 
 
 33
 In Boston Securities, Inc. v. United Bonding Insurance Co., 309 F.Supp. 1270 (E.D.Mo.1970), Aff'd, 441 F.2d 1302 (8th Cir. 1971), the district court found actions that, when considered together with other questionable activity, indicated "an intentional course of action to profit personally and to disregard the interests of his employer." Id. at 1271-1272. The Court of Appeals affirmed without discussing whether intent was necessary.
 
 
 34
 An early case from Texas in this Circuit stated that the banker's bond guarantees employee honesty:
 
 
 35
 Insurance against dishonest acts is insurance of fidelity; it is intended to, it does, guarantee openness and fair dealing on the part of the bank's officers. It is intended to, it does, underwrite that the bank's officers shall act with common honesty and an eye single to its interests. It guarantees that the bank shall at all times have the benefit of the unbiased, critical, and disinterested judgment of the president in regard to the loans it makes.
 
 
 36
 Maryland Casualty Co. v. American Trust Co., 71 F.2d 137, 138 (5th Cir. 1934). In that case, the bank's president induced insolvent friends to borrow money from the bank to buy stock in their name but for his use, using the stock as collateral. The president kept the scheme secret from the bank. The court found that "(u)nder the plainest principles of ordinary common honesty and fair dealing, his conduct was dishonest." Id. Despite broad language in the opinion, it is clear that the employee intentionally and deliberately deceived the bank. The case was cited by this Court for just that proposition. See Federal Deposit Insurance Corp. v. Aetna Casualty & Surety Co., 426 F.2d 729, 737 (5th Cir. 1970) ("deliberate deception by pretense and stealth constitute(s) dishonest and fraudulent conduct," citing Maryland Casualty Co.). Since Texas law now clearly requires intent for recovery for a "dishonest or fraudulent act," See FDIC v. Aetna Casualty & Surety Co., supra, and Great American Insurance Co. v. Langdeau, 379 S.W.2d 62, 65-66 (Tex.1964), the broad language in Maryland Casualty Co. does not reflect the present law.
 
 
 37
 After surveying these cases, we conclude that the broad language in the opinions does not carry the case further than the evidence of intentional acts of misconduct. We thus believe that Florida, in line with the view expressed by Couch on Insurance and the other authorities cited earlier in this opinion, would require willfulness and intent to deceive as essential elements of "dishonest or fraudulent" acts.
 
 Conclusion
 
 38
 Home, therefore, could only be found liable to Eglin National Bank if a jury determined that Tidwell's acts were done willfully and with the intent to deceive the bank. That would provide the adjudication adverse to Tidwell establishing that his acts were "acts of active and deliberate dishonesty committed . . . with actual dishonest purpose and intent" required to bring into play the exclusion clause in International's directors and officers liability policy.
 
 
 39
 We are not persuaded otherwise by Home's argument based on the juxtaposition of "dishonesty" and "active and deliberate dishonesty" in International's exclusion 5(e). International's policy does not purport to cover some acts of dishonesty and to deny coverage for others. The blanket exclusion in 5(e) for dishonesty-related losses is tempered by the stipulation that International will pay for losses incurred by its insured in defending Claims of dishonesty as long as the ultimate judgment does not demonstrate, as a material part of the outcome, that his challenged conduct was, in fact, dishonest. For example, in its definitions section, the policy lists as "losses" the costs of investigation and defense of claims. The language of 5(e) ensures that International could not refuse coverage for such costs on the theory that they were incurred in connection with a claim of dishonesty. Nor could International refuse to pay a judgment against Tidwell just because dishonesty was alleged, unless the final judgment showed that Tidwell was in fact dishonest and that the dishonesty was material to the cause of action. Such a judgment was made in this case.
 
 
 40
 A finding of liability against Home requires a finding of dishonesty because Home's blanket bond covered only dishonesty. Thus International automatically excludes liability for acts which must be present for recovery against Home. There is no need for a further factual determination as to the nature of Tidwell's acts. The district court therefore correctly entered summary judgment for International.
 
 
 41
 Home's motion to dismiss Tidwell's appeal against it is granted. The summary judgment for International is
 
 
 42
 AFFIRMED.
 
 
 
 [1]
 International states that the language of the exclusion clause was "adopted verbatim" by the underwriters from Section 727 of the New York Business Corporation Law (McKinney Supp.1977). That section provides that
 (b) No insurance (purchased by a corporation to indemnify directors and officers) may provide for any payment, other than cost of defense, to or on behalf of any director or officer.
 (1) if a judgment or other final adjudication adverse to the insured director or officer establishes that his acts of active and deliberate dishonesty were material to the cause of action so adjudicated, or that he personally gained in fact a financial profit or other advantage to which he was not legally entitled, or . . . .
 The New York statute, however, may have simply taken the language from the underwriters:
 The restriction in paragraph (b)(1) (§ 727(b)(1)) essentially enacted into law two of the standard exclusions in the Lloyd's form of policy (the dishonesty exclusion and the personal profit exclusion) in use at the time (1969) section 727 was adopted.
 Johnston, Corporate Indemnification and Liability Insurance for Directors and Officers, 33 Bus. Lawyer 1993, 2004-2005 (1978).
 In any event, there appears to be no case or legislative history interpreting § 727(b)(1), so the wording of § 727 is of no help to us in deciding this case.
 We also note that in 1976, Lloyd's of London adopted an optional new policy form ("LYDANDO No. 1") for its directors and officers liability insurance (which has not yet been adopted by any of the domestic insurers offering this type of insurance coverage). See Hinsey, The New Lloyd's Policy Form for Directors and Officers Liability Insurance An Analysis, 33 Bus. Lawyer 1961 (1978), setting out and analyzing the language of the new policy.
 The dishonesty exclusion in the new Lloyd's policy employs language simpler and easier to understand. It states that if the underwriter's own investigation affords reasonable grounds to determine that an exception applies, the underwriter shall not be liable to pay any loss arising from a claim made against the directors or officers
 "based upon or attributable to their having Acted dishonestly, or acted in bad faith with knowledge or with reasonble cause to believe that such action was in violation of law (including for purposes hereof the legal rights of others), Provided that such determination should be subject to reversal by a judgment or other final determination in a legal proceeding regarding this Policy to which Underwriters shall be parties."
 Policy Section 4(C)(ii), quoted from Hinsey, Supra, 33 Bus. Lawyer at 1970.
 Hinsey states that "the new wording is a more accurate statement of the intent of Underwriters." Id. at 1970-1971.
 We do not in any way rely on the new Lloyd language, or Mr. Hinsey's interpretations of it, in reaching our decision. We note, however, that the changes appear consistent with the decision we reach today.
 
 
 [2]
 Cf. Bird v. Penn Central Co., 341 F.Supp. 291 (E.D.Pa.1972) (dealing with other aspects of a directors and officers liability policy)
 For a general discussion of directors and officers liability policies, with some reference to the dishonesty exclusion clause, See Hinsey, The New Lloyd's Policy Form for Directors and Officers Liability Insurance An Analysis, 33 Bus. Lawyer 1961, 1968-1971 (1978); Johnston, Corporate Indemnification and Liability Insurance for Directors and Officers, 33 Bus. Lawyer 1993, 2019-2020, 2027, 2035 (1978).
 
 
 [3]
 See, e. g., Federal Deposit Insurance Co. v. Aetna Casualty & Surety Co., 426 F.2d 729, 736-737 (5th Cir. 1970); Essex County State Bank v. Fireman's Fund Insurance Co., 331 F.Supp. 931, 937 (D.N.J.1971). See generally 13 Couch on Insurance 2d §§ 46:54-46:58; 35 Am.Jur.2d Fidelity Bonds and Insurance §§ 22-23 (1967); 10 Am.Jur.2d Banks § 88 (1963). Cf. 18 Fla.Jur. Insurance §§ 400-408 (1971) (dealing with construction of insurance contracts generally)
 
 
 [4]
 See, e. g., First National Bank of Sikeston v. Transamerica Insurance Co., 514 F.2d 981, 987 (8th Cir. 1975); United States Fidelity & Guaranty Co. v. Bank of Thorsby, 46 F.2d 950, 951 (5th Cir. 1931); Miami National Bank v. Pennsylvania Insurance Co., 314 F.Supp. 858, 862 (S.D.Fla.1970). See also 13 Couch on Insurance 2d §§ 46:58
 
 
 [5]
 Federal Deposit Insurance Co. v. Aetna Casualty & Surety Co., 426 F.2d 729, 737 (5th Cir. 1970); United States Fidelity & Guaranty Co. v. Thorsby, 46 F.2d 950, 951 (5th Cir. 1931). See also 13 Couch on Insurance 2d § 46:56; 35 Am.Jur.2d Fidelity Bonds and Insurance § 24 (1967)
 
 
 [6]
 See, e. g., Federal Deposit Insurance Co. v. Aetna Casualty & Surety Co., 426 F.2d 729, 737 (5th Cir. 1970); Irvin Jacobs & Co. v. Fidelity & Deposit Co. of Maryland, 202 F.2d 794, 798 (7th Cir. 1953). See also 13 Couch on Insurance 2d § 46:57; 35 Am.Jur.2d Fidelity Bonds and Insurance §§ 22-23 (1967)
 
 
 [7]
 In Citizens State Bank, when checks the bank had sent for collection were returned to the bank, the vice president in charge did not charge the checks back to the customers' accounts. Instead, he made false entries in the ledger book. The court said his purposefully concealing the ledger book and false checks in the basement showed his "dishonesty."
 In Irvin Jacobs, the employee of a company making mortgage and construction loans paid out large sums of money without securing mechanic's liens and also for work that was never done, in violation of his instructions. The court said that whether this was dishonesty was a jury question, and quoted from London & Lancashire.